# EASTBURG DECLARATION
# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| IN THE MATTER OF SEARCHES<br>INVOLVING 555 GROVE STREET,<br>HERNDON, VIRGINIA, AND<br>RELATED LOCATIONS | )<br>)<br>)<br>) | <br>Misc. No.<br><br>UNDER SEAL |

"(PROPOSED REDACTED) AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT (OCTOBER 2003)

I, David Kane, a Senior Special Agent with the United States Customs Service ("USCS"), in Baltimore, Maryland, being duly sworn, depose and state:

I. Professional Experience of Affiant

1. I have served as a Special Agent ("SA") with the USCS for approximately five years. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant application, computer crimes, terrorism, and various other crimes. I have been the case agent on complex money laundering investigations that involved the domestic and international transfers of money, layering processes, falsified records and front organizations. I have been the case agent on four cases that were terrorism-related and the affiant on six federal search warrants involving money laundering violations.

2. Prior to joining the USCS, I obtained a B.A. degree in Government and Politics and a Masters degree in International Transactions from George Mason University. I worked as a financial services agent with Prudential Preferred Financial Services, where I analyzed financial structures and executed financial transactions with complex, international financial instruments on a regular basis.

Ex. 10

## II. The Investigation

3. Since December 2001, I and other agents of the USCS, the Internal Revenue Service-Criminal Investigation ("IRS-CI"), and the Federal Bureau of Investigation ("FBI"), have been investigating a group of individuals that are suspected of providing material support to terrorists, money laundering, and tax evasion through the use of a variety of related for-profit companies and ostensible charitable entities under their control, most of which are located at 555 Grove Street, Herndon, Virginia. For ease of reference, I will refer to the web of companies and charities controlled by these individuals as the "*Safa Group*." To a large extent, the present investigation has built on the findings of an investigation previously conducted with respect to these individuals between 1998 and 2000 by the USCS, the FBI, and the Immigration and Naturalization Service ("INS"), for suspicion of the same violations.

4. I will show in this affidavit that probable cause exists to believe that these individuals have committed and conspired to commit the following offenses:

a. Transmit money internationally for the purpose of promoting offenses against foreign nations involving murder or the destruction of property by means of explosives, fire, kidnaping or extortion, in violation of 18 U.S.C. § 1956(a)(2)(A) and (h);

b. Provide material support or resources to foreign terrorist organizations, in violation of 18 U.S.C. § 2339B;

c. Provide material support or conceal or disguise the source or ownership of material support intended for use in preparation for or in carrying out a terrorist act, in violation of 18 U.S.C. § 2339A;

d. Defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of federal income taxes, in violation of 18 U.S.C. § 371, by availing themselves of the advantages of exemption from federal income taxation while abusing the

investigation. The Administration Building at *Mar-Jac Poultry* contains the business's financial records.[1]

e. <u>The Residence of *Al-Alwani* at 1105 Safa Street, Herndon, Virginia</u>

1105 Safa Street in Herndon is the residence of *Taha Jaber Al-Alwani*, an officer and/or director of *Safa Group* companies including *International Institute of Islamic Thought* ("*IIIT*"), *FIQH Council of North America* ("*FIQH*"), *Graduate School of Islamic & Social Sciences* ("*GSISS*") (formerly known as the *School of Islamic and Social Sciences* ("*SISS*")) and *Heritage Education Trust*.

f. <u>The Residence of *Barzinji* at 11919 Safa Court, Herndon, Virginia</u>

11919 Safa Court in Herndon is the residence of *Jamal Barzinji*, an officer and/or director of *Safa Group* companies, including *Mar-Jac Poultry, Inc.*, *Mena Investments, Inc.*, *Reston Investments, Inc.*, and *Safa Trust*.

g. <u>The Residence of *Mirza* at 11922 Safa Court, Herndon, Virginia</u>

11922 Safa Court in Herndon is the residence of *M. Yacub Mirza*, an officer and/or director of *Safa Group* companies including *African Muslim Agency*, *GSISS*, *Grove Corporate Plaza*, *Mar-Jac Investments*, *Mar-Jac Poultry*, *Mena Investments*, *Reston Investments*, *SAAR Foundation*, *Safa Trust*, *Sterling Management Group*, and *York Foundation*.

[1] It is perhaps worthwhile to note here that, pursuant to the USA PATRIOT ACT, enacted in October 2001, Rule 41 of the Federal Rules of Criminal Procedure now authorizes warrants to be issued by a Federal magistrate judge in any district in which activities related to terrorism may have occurred, for property outside the district.

h. The Residence of *Jaghlit* at 9034 Swift Creek Road, Fairfax Station, Virginia

9034 Swift Creek Road in Fairfax Station is the residence of *Mohammad Jaghlit*, an officer and/or director of *Safa Group* companies, including *Heritage Education Trust* and *SAAR Foundation.*

i. The Residence of *Totonji* at 305 Marjorie Lane, Herndon, Virginia

305 Marjorie Lane in Herndon is the residence of *Ahmad Totonji*, an officer and/or director of *Safa Group* companies, including *IIIT* and *Safa Trust, Inc.*

j. The Residence of *Unus* at 12607 Rock Ridge Road, Herndon, Virginia

12607 Rock Ridge Road in Herndon is the residence of *Iqbal Unus*, an officer and/or director of *Safa Group* companies including *Child Development Foundation*, as well as the administrative and billing contact for web sites for *IIIT* and *FIQH Council of North America.*

k. The Residence of *M. Omar Ashraf* at 12541 Browns Ferry Road, Herndon, VA.

12541 Browns Ferry Road in Herndon is the residence of *Mohammad Omar Ashraf*, an officer and/or director of *Safa Group* companies, including *Grove Corporate Plaza*, *Mar-Jac Investments*, and *Sterling Charitable Gift Fund.*

l. The Residence of *Muhammad Ashraf* at 12528 Rock Ridge Road, Herndon, VA.

12528 Rock Ridge Road in Herndon is the residence of *Muhammad Ashraf*, an officer and/or director of *Safa Group* companies including *Sterling Investment Group*, *Sterling Charitable Gift Fund*, and *York Foundation.*

Executive Summary of This Affidavit

1. I am investigating a criminal conspiracy to provide material support to terrorist organizations by a group of Middle Eastern nationals living in Northern Virginia. These

individuals operate or have operated over 100 different organizations, on which they commonly serve as corporate officers. These organizations include charitable organizations, educational and cultural organizations, for-profit businesses and investment firms. For the purpose of this affidavit, this group of individuals and the organizations that they operate will be referred to as the "*Safa Group*."

2. Many organizations in the *Safa Group* dissolve and are replaced by other organizations under the control of the same individuals. Most of these *Safa Group* organizations, which present themselves as Islamic educational and charitable organizations, are "paper" organizations that are registered at common addresses, but have no apparent physical presence on the premises. The majority of these organizations is or was located at 555 Grove Street, Herndon, Virginia.

3. I have seen evidence of the transfer of large amounts of funds from the *Safa Group* organizations directly to terrorist-front organizations since the early 1990's. Some of this information was developed by the FBI, the USCS, and the INS, in previous investigations conducted of terrorist financing that focused on *Sami Al-Arian*, who fronted for the *Palestinian Islamic Jihad-Shikaki Faction* ("*PIJ*"), an organization that has been formally designated by the President of the United States as a terrorist organization since 1995. This previous investigation, which resulted in search warrants being executed in Tampa, Florida, in 1995, showed that money was being provided directly to *PIJ* front organizations by individuals controlling the *Safa Group*.

4. In 1998, the FBI opened an investigation of the *Safa Group*'s terrorist financing connections as a result of the seizures made in the *Al-Arian* search warrants in Tampa in 1995. Investigators then noticed that the pattern of direct funding to the *PIJ* front organizations had

changed since the mid-1990s. By the late 1990's, the finances of the *Safa Group*, including charities required by law to open their books to the public, exhibited a convoluted web of multiple transactions between related corporations and charities that made it virtually impossible for federal investigators to ascertain where the money that finally left the web of the *Safa Group* ultimately went. Indeed, the current investigation has traced millions of dollars through layers of related companies and to charities in the Isle of Man – from which point the trail cannot practically be followed.

5. The FBI, USCS, and IRS agents involved in this investigation at various times since 1998 suspect that, as a result of the 1995 searches in Tampa, the *Safa Group* engaged in the money laundering tactic of "layering" to hide from law enforcement authorities the trail of its support for terrorists. There appears to be no innocent explanation for the use of layers and layers of transactions between *Safa Group* companies and charities *other than* to throw law enforcement authorities off the trail; this inference is strengthened by the *Safa Group*'s repeated failure to disclose on tax forms as required the connections between various members of the *Safa Group*. Accordingly, I and the other agents involved in this investigation believe that some of the moneys that move overseas are destined to the *PIJ* and other terrorist organizations; at the least, the money is being used for other than tax-exempt purposes in violation of the tax laws.

6. I will show in this affidavit that evidence exists that individuals associated with the *Safa Group* are using the various affiliated charities and companies under their control to transfer money in convoluted transactions through a network of inter-related organizations designed to prevent the United States from tracking the ultimate recipients, in violation of the charter of the charitable organizations and the laws relating to the use of tax exempt status.

7. Based on the past histories of the individuals involved with respect to their overt financial support for terrorist organizations, their repeated misrepresentations by omissions on tax forms of information concealing the interrelationships between the *Safa Group* companies and charities under their control, and the lack of an innocent reason to conduct transactions in these convoluted manners, there is probable cause that the *Safa Group* companies and charities are being used to transfer money to terrorist front groups or some other illicit application. At the very least, however, this evidence constitutes probable cause that the individuals and entities involved have repeatedly made false tax filings and are conspiring to abuse the tax exempt status claimed by many of the related *Safa Group* charities.

8. I will also show in this affidavit that records relevant to material support to terrorists, money laundering, and tax evasion likely have been generated or maintained by the *Safa Group* companies and charities, and by the individuals involved. Finally, I will show in this affidavit that these records will be found at the business premises of the *Safa Group* companies and charities, such as 555 Grove Street, in Herndon, and at the homes of some of the individuals involved.

IV. Overview of Terrorism and Terrorist-Financing Techniques

9. Based upon my training and experience, and that of other agents from the USCS, the FBI, the IRS, and the INS, involved in this and related investigations, I know the following regarding terrorist financing techniques:

a. Many terrorist organizations have a financial support structure in the United States and in virtually every other developed country.

b. Often, terrorists and their supporters who are motivated by religious ideology, such as Islamic fundamentalist terrorists and their supporters,

provide profits to terrorists include: construction companies, tanneries, banks, agricultural commodity growers and brokers, trade businesses, bakeries, restaurants, bookstores, and other proprietorships.

2. Social and Religious Organizations: Since the early 1990s, terrorist groups have relied increasingly on donations for financial support, much of it from like-minded, non-governmental organizations (such as charities) in the West and Persian Gulf states.

3. State Sponsors: Several rogue nations provide material assistance or resources to terrorists and some provide financial support to terrorists. Other, more moderate governments also have been a source of financial support for some terrorist organizations.

f. Tracking terrorist financial transactions is more difficult than following the money trails of mainstream criminal groups because of the relatively small amounts of funds required for terrorist actions, the broad range of "legitimate" sources and uses of funds. While many organized crime groups are adept at concealing their wealth and cash flows for long periods of time, their involvement in the physical trade of illicit drugs, arms, and other commodities often exposes the revenues and expenditures connected to these illegal dealings. In contrast, terrorist actions generally are comparatively inexpensive and their financing often is overshadowed by the larger financial resources allocated for the group's political and social activities, making it more difficult to uncover the illicit nexus. For example, investigations into the terrorist attacks on the World Trade Center and the Pentagon on September 11, 2001 have revealed that the overall financing for the attacks totaled approximately $500,000.

g. Terrorist groups use a variety of means to move their funds, including

1. Physical Transportation: Cash physically transported by trusted operatives (couriers) is the most difficult to track because it usually leaves no paper trail.

2. Traditional Financial Institutions: The international nature of most foreign terrorist groups forces them to rely on banks and other financial institutions. Cells of extremists need local access to funds, and organizations with substantial assets seek the safety and productive management offered by banks, insurance companies, and foundations, albeit in the names of trusted nominees, cover companies, or religious fronts.

3. Offshore Banks: As do traditional criminal enterprises, terrorist organizations often utilize offshore banks to move their "licit" and illicit funds. Terrorists know that it is difficult for U.S. investigators to track these moneys, due to the financial secrecy and lack of regulated oversight associated with offshore banking centers. Traditional tax haven centers where offshore banking and money laundering tend to thrive include the Isle of Man, the Channel Islands, and Switzerland.

h. Charitable Organizations: Terrorists often establish or utilize "charitable organizations" to move their illicit proceeds. Terrorists know that many charities receive contributions in the form of cash, and that it is very difficult for investigators to trace money moving through these organizations. Most charitable organizations are assumed to be of an altruistic and benevolent nature, so criminals often use them knowing that charities are subjected to less government scrutiny.

i. Layering: Terrorist organizations, like traditional criminal organizations, often "launder" their illicit proceeds by utilizing a complex sequence of financial transactions. Sophisticated terrorist financiers try to make the money trail left by their transactions as difficult to follow as possible by "layering" their transactions; that is to say, by routing their money through numerous paths and indirect channels before ultimately causing their money to arrive at the desired location. These "layering" transactions often utilize many different individuals and corporations and involve many different bank accounts, false names, "front companies", and "phantom" organizations. These layering processes are designed to both disguise the true origin and end-destination of the funds and to render exceedingly difficult and confusing any prospective investigation by law enforcement authorities.

j. Foreign Bank Accounts: Terrorists will hide the existence of their personal or their company's foreign bank accounts to obfuscate the trail of international financial transactions and evade law enforcement.

k. Saudi Arabian nationals who are suspected of providing funds to terrorists are subject to scrutiny by the Saudi Arabian authorities. Due to this scrutiny, these individuals cannot provide money to terrorists via direct transfers from their bank accounts in Saudi Arabia. Therefore, they find alternate methods and routes to fund terrorists. This often involves utilizing their own or other overseas organizations to funnel money to terrorists. These organizations are located in many different parts of the

- - or directly to *Al-Arian* himself - - knew that they were sending it to support suicide bombings and terrorism conducted by *PIJ.* Similarly, there is probable cause to believe that those contributors to *HLF* who knew the leaders of *HAMAS* or *HLF* - -and at least some of those who did not - - contributed their money to support suicide bombings and terrorism conducted by *HAMAS.*

59. Finally, there is probable cause to believe that many of those who sent money to *Al-Arian, WISE*, and *ICP* for *PIJ*, as well as some of those who sent money to *HLF*, conspired to provide material support to terrorists, and to engage in international transfers of money to promote offenses against a foreign nation involving murder, kidnaping, robbery, extortion, and the destruction of property by means of explosive or fire, in violation of 18 U.S.C. §§ 1956(a)(2) and (h) and 2339A and 2339B.

## IX. The *Safa Group* and Associated Individuals

60. In the next sections of this affidavit, I will show the probable cause to believe that the individuals controlling the *Safa Group* sent money to *HLF* and *Al-Arian* to support suicide bombings conducted by *HAMAS* and *PIJ.* First I will establish that the individuals controlling the share a common ideology with *HAMAS* and *PIJ* and know exactly what *HAMAS* and *PIJ* do with the monies they receive. Then I will establish that these individuals have continued to send money to *HLF* and *Al-Arian* for *HAMAS* and *PIJ*, through ever more concealed methods.

### A. The Ideology

61. I have found information indicative of a conspiracy between *Safa Group* individuals and Sami *Al-Arian* to support and fund terrorists and terrorist groups including *HAMAS* and *PIJ.* A most striking example is a letter seized during the 1995 search warrants, from a central figure

in the *Safa Group*, *Al-Alwani* at *IIIT* (both of which will be further identified below) to *Al-Arian* at *WISE*, and dated November 19, 1991. In that letter, *Al-Alwani* referred to the payment of monies from *IIIT* to *PIJ*, and wrote that he and his colleagues, and their organizations, considered themselves to be indistinguishable from *Al-Arian*, *Shallah* (now the head of *PIJ*) and other founders and members of *PIJ*. In specific, *Al-Alwani* stated in his letter to *Al-Arian*:

> Honorable brother, I think we do not need to affirm that we consider you as a Group, you and brother *Mazen* [*al-Najar*] and brother *Khalil* [*Shikaki*, brother of *PIJ* founder *Fathi Shikaki*] and brother *Bashir* [*Nafi* ] and Brother *Ramadan* [*Shallah*, present head of *PIJ*] and *Sheikh Abdel Aziz* [*Odeh*, a founder and spiritual leader of the *PIJ*], a part of us and an extension of us, and us part of you and extension of you also, we never experienced any doubts about that since we knew you and we will continue like that.

62. *Al-Alwani* continued:

> And the matter of the financial support was never the basis of our relationship, for our relation added to the brotherhood of faith and Islam is an ideological and cultural concordance with the same objectives and all of your institutions are considered by us as ours, and they receive all the attention, and I explained to you the circumstances the institutions of your brother go through, and despite which we can truthfully say that we gave your institutions or our institutions that you manage more attention than institutions we manage by ourselves, because you are in an important positions without a doubt, and you deserve from us and our likes all cooperation, God willing . . . .

63. *Al-Alwani* stated that he was speaking not only for himself, but also for other members of the *Safa Group*:

> And I would like to affirm these feelings to you directly on my behalf and on the behalf of all my brothers, Dr. *Abdel Hamid* [*Abusulayman*], Dr. *Jamal* [*Barzinji* ], Dr. *Ahmad* [*Totonji* ], Dr. *Hisham* [*Al-Talib*] . . . .

64. *Al-Alwani* noted that it didn't matter to the *Safa Group* how *Al-Arian* characterized the $45,000 *Al-Arian* received from the *Safa Group*, as part of its total contribution of $50,000 (I have added the bold type):

> And I would like to affirm these feelings to you directly on my behalf and on the behalf of all my brothers, Dr. Abdel Hamid, Dr. Jamal, Dr. Ahmad, Dr. Hisham, and at the same time, affirm to you that when we make a commitment to you, or we try to offer, we do it for you as a Group, **regardless of the side or the facade you use the donation for**...." What is left is to remind you that what is mentioned in your letter is that what you already received is forty thousands, and what we have in the records for you is forty-five thousands, and I will inquire about the matter with the brothers accountants so I will send you what will complete the amount of fifty thousands, God willing . . . .

B. The Individuals

65. The below-listed individuals are the founding and facilitating members of the *Safa Group,* an interwoven set of organizations that were established in the U.S. with the assistance of other Saudi Arabian and other Middle Eastern nationals. Based on the evidence in this affidavit, I know that they are ardent supporters of *PIJ* and *HAMAS.* They have repeatedly voiced their ideological support. I have seen repeated instances of their financial support, and believe that they have acted to conceal many other instances of their financial support.

66. *Abdulhamid Abusulayman* incorporated *IIIT* in Virginia with *Taha Jaber Al-Alwani* in 1982. In the letter from *Al-Alwani* to *Al-Arian* seized in the 1995 searches in Tampa, quoted

above, *Al-Alwani* affirmed that *PIJ* and the *Safa Group* shared a common ideology. *Al-Alwani* expressly mentioned *Abusulayman* as having the same sentiments as the entire *Safa Group*.

67. *Taha Jaber Al-Alwani* incorporated *IIIT* with *Abusulayman* in 1982, and was the president of *IIIT* from about 1986 through 1997. *Al-Alwani* wrote the letter to *Al-Arian* expressing solidarity as quoted above. In another seized document, *Al-Alwani* refers to $50,000 in financing that he and the *Safa Group* provided to *WISE /ICP*.

68. Various documents and videotapes obtained in the Tampa searches show that *Al-Alwani*, the President of *IIIT*, attended and spoke at *ICP* conferences with *Al-Arian*, *Shallah*, *Sheik Odeh* (spiritual leader and co-founder of *PIJ*) and *Sheik Rahman* (the "Blind Sheik" convicted of conspiracy to blow up New York tunnels and the United Nations in New York in October 1995). Inasmuch as *ICP* conferences were, in essence, *PIJ* conferences, I know that *Al-Alwani* has long been a supporter of *PIJ*.

69. In October 1999, a confidential asset of the FBI, who has provided reliable information in the past, furnished the Washington Field Office of the FBI a copy of a fatwa (declaration) signed by *Al-Alwani* at some point between December 1988 and November 1989, proclaiming

> the truth by the powers invested in us by Allah, that Jihad is the only way to liberate Palestine; that no person or authority may settle the Jews on the land of Palestine or cede to them any part thereof, or recognize any right therein for them.

70. In early 2000, *Al-Alwani* spoke with FBI Special Agents Ammerman and Wyman. *Al-Alwani* admitted to attending several *ICP* meetings with *Al-Arian*, as well as being acquainted with *Nafi* and *Shallah*. *Al-Alwani* stated that he maintained regular contact with *Al-Arian*, and

check for $10,000 to *Al-Arian* through *Al-Arian*'s organization known as the Tampa Bay Coalition for Justice and Peace, drafted on the account of *Safa Group* charity *IIIT*.

80. *Iqbal Unus* is a director of the *Child Development Foundation*, a *Safa Group* organization, along with *Abusulayman* and *Al-Talib*, an advisor on the *Sterling Charitable Gift Fund* and *Sterling Management Group* organizations, and the administrative and billing contact for web sites for *IIIT* and *FIQH Council of North America*.

C. The Funding

81. Discovered in the Tampa searches in 1995 were letters indicating that in 1991 and 1992, *IIIT* contributed at least $50,000 to *PIJ* front-group *WISE*. Moreover, another document seized during these warrants was a 1991 letter from *Shallah* – now the leader of *PIJ* – to an administrator of the University of South Florida, with a copy to *Nafi*, stating that *IIIT* was the largest contributor to *WISE*.

82. Additional documents seized in Tampa in 1995 include two that *Jaghlit* sent to *Al-Arian* in 1994, referencing checks enclosed by with the letters from *Safa Group* charity the *SAAR Foundation* for $10,000 and $5,000, respectively. In both of these letters, *Jaghlit* instructed *Al-Arian* not to disclose the contribution publicly or to the media. I conclude from *Jaghlit*'s instructions that *Jaghlit* knew very well that the *SAAR* money was going to *PIJ* to support terrorism.

83. On February 2, 1995, *Mirza* signed a check for $15,000 to *WISE* on a *Safa* bank account, the deposit slip for which was found in *Al-Arian*'s home during execution of the 1995 search warrants.

84. As recently as November 1, 2001, *Totonji* wrote a check for $10,000 to *Al-Arian* through *Al-Arian*'s Tampa Bay Coalition for Justice and Peace, drafted on *IIIT*'s account at First Union Bank in Herndon.

85. IRS Form 990 for *Safa Trust, Inc.* for tax year 1996 indicated that *Safa* maintained $162,000 as "a library trust" for *HAMAS* -front *HLF*. In 1997, HLF received three *Safa Trust* checks in the amounts of $75,000, $87,500, and $162,500, all signed by *Mirza.*

X. Evidence of Layering Indicative of Money Laundering, Tax Evasion, and Material Support to Terrorists

A. Overview

86. The investigation has focused on the organizations associated with the *Safa Group* through corporate records, tax filings, financial transactions, interviews with confidential informants, and visual surveillance. I have determined that the individuals associated with the *Safa Group* use or have used over 100 organizations, which are interrelated through corporate officers and holding company - subsidiary relationships, to facilitate the funding of terrorist operations. Many of these organizations are listed in Attachment C. A list of most of the individuals acting as officers of *Safa Group* organizations referencing the organizations with which they are associated is included as Attachment D; both Attachments C and D are incorporated by reference here.

87. This array of organizations includes for-profit businesses, purported educational institutions, and charities. Many of the organizations have identical or overlapping directorates or management. Many of the organizations of the *Safa Group* are phantom entities with no physical presence, as evidenced by the multiple addresses for the organizations provided on official documents and the lack of signs announcing the various organizations at what is represented to be their business address. The relationships and operations of these organizations are convoluted not only by the repeating pattern of corporate officers and directors but also the large number of entities involved.

88. While I don't now know for sure why the labyrinth of organizations and charities that comprise the *Safa Group* was constructed, there does not appear to be any innocent explanation. In the course of the investigation, I have considered why this labyrinth was constructed. Possible explanations include

a. To conceal support for terrorism;

b. To conceal support for otherwise non-exempt organizations (for example, to conceal support to foreign charities over which domestic charities do not maintain control, or even to political parties);

c. To shelter income derived from what actually are personal investments; and

d. To shelter income derived what actually was someone else's personal investments for which individuals in the United States were trustees (for example, to shelter income on the investments of a member of the *Al Rajhi* family);

e. To shelter income from personal investments in the course of sheltering income for someone else (some combination of "c" and "d" above); and

f. To avoid excise taxes that would otherwise be due and payable on private foundations.

Based on the past history of the individuals involved, I believe that the most likely reason is to conceal support for terrorism.

89. Although the *Safa Group* consists of over 100 interwoven organizations, the investigation has focused on approximately 20 core organizations, and their associated corporate officers and directors. The table below illustrates the overlapping directorates by listing the *Safa Group* members on which this investigation has focused and their principal officers, directors and trustees:

B. Analysis of the *Safa Charities*

90. IRS tax files and corporation documents disclose that 555 Grove Street, 500 Grove Street, and associated addressed in Herndon are the corporate offices of record for over 100 active and defunct corporations, partnerships and tax exempt charitable organizations that are woven together by common officers and directors. According to the Virginia Secretary of State, approximately 40 active corporations claim their offices to be located at 555 Grove Street, alone.

91. IRS Special Agents Mary Balberchak, Paul Shanks and Steven Smith reviewed Forms 990 (Return of Organization Exempt From Income Tax) and additional tax-related information for seven tax-exempt *Safa Group* organizations. Many of the conspirators are officers in one or more of those charitable organizations. All seven of the charitable organizations (hereinafter, the "*Safa Charities*") are located in or near Herndon, Virginia, and five are co-located at the same 555 Grove Street address. The *Safa Charities* are:

| | | |
|---|---|---|
| *African Muslim Agency* | *Heritage Education Trust* | *IIIT* |
| *SAAR Foundation* | *Safa Trust* | *Sterling Charitable Gift Fund* |
| *York Foundation* | | |

92. The IRS Special Agents also reviewed individual tax returns of certain officers of the same tax-exempt organizations as well as corporate returns of for profit businesses that are wholly owned by a *Safa Charity* and/or controlled by the same officers, directors and trustees that control the charities. In 2000 the IRS conducted a limited examination on one of those charities. The IRS Special Agents reviewed the audit file and consulted with the two IRS Revenue Agents that conducted the examination on that entity. Other documents were also reviewed, including corporation documents for the same entities and other related companies, certain real estate settlement documents and bank records.

93. Analysis of the above returns and available supporting documentation disclosed a series of transactions between related companies that, when examined in their entirety, evidences a conspiracy between *Mirza, Abusulayman, Al-Alwani, Barzinji, Al-Talib, M. Omar Ashraf, Muhammad Ashraf, Jaghlit, Sedky, Ahmad Totonji*, and others, known and unknown, to route money through hidden paths to terrorists, and to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of federal income taxes. What follows is a summary of allegations, evidence of which will be detailed in this affidavit.

94. The conspirators have moved or authorized the movement of funds through a series of transactions involving the *Safa Group*, which includes the *Safa Charities*, and also for-profit corporations owned by or related to them. The evidence to date demonstrates that multiple millions of dollars have been moved between the *Safa Charities*, between the for-profit members of the *Safa Group* and the *Safa Charities*, and between the *Safa Charities* and foreign entities represented to be charitable in nature. The financial transactions involve contributions to the *Safa Charities* from for-profit corporations of the *Safa Group*, loans to for-profit corporations in the *Safa Group*, contributions, loans, and grants between the *Safa Charities* and the movement of funds from the *Safa Charities* into offshore trusts and other foreign entities.

95. Although, based on their representations to the IRS, each of the *Safa Charities* is treated as a public charity under federal tax laws, their gross revenues derive from sources which make the basis for their meeting the public support test unclear. Of the contributions to the *Safa Charities* for 1996-2000, the vast majority, over 71.8% percent, comes from other members of the *Safa Group* or from their principals. Of that support which does not emanate from the *Safa*

*Group* or its principals another 12.2% is reportedly derived from the unidentified contributors labeled "overseas general public." 13.2%, is comprised of funds from other overseas entities including benefactors in Kuwait, Saudi Arabia, and Malaysia.

96. Similarly, the pattern of grants and allocations made does not demonstrate the *Safa Charities* are operating for an exempt purpose. The grants and allocations made by the *Safa Charities* generally go to other members of the *Safa Charities*, or in some instances, other charities within the *Safa Group*. For the years in question 84.4% went to these entities. Another 14.3% was reportedly given to recipients which, contrary to law, the *Safa Charities* did not identify on the relevant Forms 990.

97. In addition, of the $54 million in grants and allocations reported for 1996-2000, $26 million (or 49%) was transferred to entities in the Isle of Man, $20 million (or 37%) remained within the *Safa Charities*. Of the balance approximately $7.7 (or 14.3%) went to unidentified donees. Accordingly, I believe that the *Safa Charities* are used to shuttle monies between them, blur the trail, and hinder the ability of investigators to ascertain the ultimate disposition of those monies. This investigation *has* followed the complex trail and determined, as stated above, that, of the funds whose recipients can be identified, virtually the only monies disbursed by the *Safa Charities* are monies that were disbursed *either* to other *Safa Charities*, or transferred to the name of off shore entities in tax havens.

98. By exercising common control, the *Safa Charities* ensure the tax benefits of their movement of funds between tax-exempt and for-profit entities, without ever having to surrender control of the funds. Although substantial funds are moved between various entities, the conspirators have maintained control over their disposition even after the funds are transferred

107. On the basis of the foregoing, I have probable cause to believe that the *Safa Charities* are being operated to hide the distribution of monies to *PIJ* and *HAMAS*, and, I have probable cause to believe that they are being operated for the primary purpose of conducting a business unrelated to their exempt purposes, *i.e.*, investing and managing the substantial funds accumulated by the *Safa Charities*.

108. The money movements between the *Safa Charities* create the false impression they are publicly supported and operating for an exempt purpose, when, by and large, the funds never leave the control of the *Safa Charities* and their offshore related entities. Thus, the principals of the *Safa Charities* are manipulating the tax exempt status of the *Safa Charities* as part of a conspiracy to impede and impair the Internal Revenue Service in the determination and collection of federal tax, and to do so, are misrepresenting the nature of the operations of the *Safa Charities* to IRS officials and the public.

109. It is important to remember that many of the organizations in the *Safa Group* as listed in Attachment C are for-profit businesses. One, *Mar-Jac Poultry, Inc.*, is a large poultry processor located at 1020 Aviation Boulevard, Gainesville, Georgia, whose principal officers are *Barzinji, Al-Talib, M. Omar Ashraf* and *Mirza*. The bank signature cards for *Mar-Jac Poultry, Inc.* show that *Barzinji, Al-Talib, Mirza* and *M. Omar Ashraf* have signatory authority over the bank accounts. Additionally, UCC-1 filings show that *Humana* was a creditor of *Mar-Jac Poultry* after July 2000.

110. First Union and IRS records reflect that *Mar-Jac Poultry* transferred millions of dollars to *Safa Group* businesses and charities between 1997 and 2000. IRS filings and corporate bank records show that *Mar-Jac Poultry* is owned by *Mar-Jac Holdings, Inc.*, which is a

through" accounts. A "pass through" account is an account that is utilized as part of a layering process. Money that enters these accounts tend to remain there for short periods of time, after which the money is then transferred on to another account. "Pass through" accounts are commonly utilized by criminal organizations to convolute the trail of any illicit moneys.

115. An example of an intra-*Safa Group* money transfer and apparent "pass through" activity that I believe is conducted for the purpose of layering financial transactions and confusing any ostensible investigation of the group occurred just last fall. First Union records reflect that the *Sterling Charitable Gift Fund* deposited a check received from *Mar-Jac* Poultry for $250,000 on October 26, 2001. Those records further show that *Sterling* transferred $100,000 to *SAAR Foundation* on November 2, 2001, from the same First Union account that received the check from *Mar-Jac* Poultry. Moreover, *Sterling* wire transferred the remaining $150,000 to *SAAR Foundation* on November 29, 2001.

116. Inasmuch as the money from *Mar-Jac Poultry* obviously was destined for *SAAR Foundation* (however temporarily), I suspect that it was first routed to *Sterling* only to make it more difficult for investigators to decipher the ultimate disposition of the $250,000 apparently generated by *Mar-Jac Poultry*. But the difficulty created by the positioning of *Sterling* between *Mar-Jac* and *SAAR* on the money trail is only one of many barriers created by the *Safa* Group to any investigator trying to ascertain the ultimate disposition of *Safa Group* money. As explained above, it is impossible to determine from domestic bank records the ultimate location of money received by *SAAR*, for *SAAR* was itself but a way-station for money being routed around the world by the *Safa* Group; before *SAAR* was officially dissolved in 2000 (long before receiving

the $250,000 from *Mar-Jac* by way of *Sterling*), it made virtually all of its disbursements to "charities" located in the Isle of Man.

117. As an example of layering involved a charitable contribution and loan, *Safa* contributed $8.6 million to *Heritage* according to the *Safa* Trust 990. In that same year *Heritage* loaned $5.5 million to *Mar-Jac Holdings*, *Safa's* majority owned subsidiary. In the following year, Heritage transferred $4.1 million to *Safa*, reporting that this was a return of the 1996 contribution.

118. There is no reason *Safa* could not have made the loan directly to *Mar-Jac Holdings*, its subsidiary. I believe that the route the funds traveled, from *Safa* to *Heritage* to *Mar-Jac*, with a portion being returned to *Safa*, was designed to disguise the true nature of the transaction and the ultimate disposition of these funds.

119. All of these financial activities listed above are indicative of money laundering. The layering and pass through activities that occur are designed to disguise the origin and ultimate destination of the moneys. I suspect that moneys ultimately are transferred directly to terrorist organizations from the *Safa Group* entities on the Isle of Man, or that funds are otherwise expended for purposes which do not further the *Safa Charities*' exempt purpose(s). Due to bank secrecy laws in such tax havens, it is very difficult for investigators to have access to bank account information. I expect evidence related to these money laundering, terrorist support activities and tax fraud to be found at the subject addresses of this affidavit.

C. Particulars

120. Based on the work of the IRS-CI Special Agents, I will now turn to the particulars of the *Safa Charities*:

1. *African Muslim Agency*

121. IRS records show the *African Muslim Agency* is a tax-exempt organization located at 555 Grove Street, Herndon, Virginia, with a reported purpose to "help other charitable organizations." According to its Form 990 filed in May 2001, two of its three officers were *Al-Talib* and *Mirza*.

122. 91.3% of *African Muslim Agency*'s contributions between 1996-2000 were derived from *Safa* Group related entities[2] and/or individuals; at least 4.1% came from unidentified contributors. For the same period, 42.2% of *African Muslim Agency*'s grants and allocations were made to *Safa* Group related entities and 53% were made to unidentified donees. No contributions, grants or allocations were identified on the 1996 Form 990. The 1997 return showed $100,000 in contributions and $144,000 in grants and allocations, but no identified contributors or donees. The 1998 return showed contributions received of $1,110,000 - - 99% of which came from *Mar-Jac* Poultry, *Inc.*, a *Safa Group* company for which *Mirza, Altaib, Barzinji* and *M. Omar Ashraf* are officers - - and grants/allocations disbursed of $1,065,000 - - of which 90% went to *Safa* Group companies *IIIT* and *York* International. The 1999 Form 990 showed $1,125,000 contributions from one contributor – *Mar-Jac* Poultry, *Inc.*

[2] "Related entities and/or individuals" as used herein refers to either other *Safa Charities*, officer(s), director(s), or trustee(s) of one of the *Safa Charities*, or for-profit or tax-exempt organizations for which one or more officer(s), director(s), or trustee(s) of the seven charities are also officer(s), director(s), or trustee(s) within the *Safa Group*. This is not the same definition applied to the various questions on Form 990.

Form 990 for 1999 reflects contributions of $1,432,500, 93% of which were received from related *Safa Group* individuals and entities. *York* illegally failed to identify any of its donees for the year. In 2000, at least 97% of the $4,967,762 it received came from related *Safa Group* individuals and entities; it made cash grants and contributions of $392,000 to *IIIT* and $400,000 to *York* International in the Isle of Man.

XI. False Statements on the Forms 990

A. General

141. In the course of their review of the Forms 990 for the *Safa Charities*, the agents assigned to this investigation have discussed and reviewed certain entities on these returns with tax law specialists from IRS's Tax-Exempt and Government Entities, Exempt Organization Division. These specialists confirmed, based on evidence presented to them by the investigating agents, that infomation as to relationships to the reporting entity required by Form 990, Part VI, Question 80(a) and Form 990, Schedule A, Part III, Question 2 should have been disclosed by the tax exempt entity. The succeeding paragraphs describe the information sought by those questions and the evidence which demonstrates the answers provided were false.

B. False Statements Regarding Relationships to Other Organizations

142. Part VI, Line 80a, Form 990, asks, " Is the organization related (other than by association with a statewide or nationwide organization) through common membership, governing bodies, trustees, officers, etc. to any other exempt or nonexempt organization?" If answered "yes", the name of the organization is required to be identified. The instructions for Form 990 indicate that a "yes" answer to Line 80a is required if most (more than 50%) of the organization's governing body, officers, directors, trustees, or membership are also officers, directors, trustees, or members of any other organization. The officers, directors, trustees, or members need not constitute 50% or more of the other organization. Thus, if the reporting organization has a total of five officers and three of those officers sit on the board of 12 directors of another entity, then the organizations are related and the relationship must be disclosed.

143. A review of the Forms 990 filed with IRS, tax returns of other related entities, tax related information, and corporate information obtained from the Virginia State Corporation Commission revealed the following:

144. *Mirza*, *M. Omar Ashraf*, and *Muhammad Ashraf* were the sole individuals listed as officers, directors, trustees, and key employees on *Sterling Charitable Gift Fund*'s Form 990 for the year 2000. Line 80a, Part VI, of this return, concerning related organizations, was answered "no". However, a review of the 1999 and 2000 Forms 990 for *York Foundation* revealed that *Mirza* and *Muhammad Ashraf* were also two of the three listed officers, directors, trustees, and key employees of *York Foundation*. *York*'s Form 990 also reflected the answer "no" on line 80a, Part VI. *Mirza* signed as President on both the *York* Form 990 and the *Sterling* Form 990. The responses on both returns are false because they failed to report that the two organizations were related to each other.

145. According to Virginia State corporation records, *Mirza*, *M. Omar Ashraf*, and *Muhammad Ashraf* were either the only officers and directors, or comprised the majority (greater than 50%) of the officers or directors of: *Mar-Jac Investments, Inc.* (located at 555 Grove Street, Suite 110, Herndon, VA), of *Grove Corporate Plaza, Inc.* (no longer in business; formerly located at 555 Grove St., Suite 110, Herndon, VA), and of *Sterling Management Group, Inc.* (located at 555 Grove St., Suite 116) for the year 2000. None of these relationships are disclosed on *Sterling Charitable Gift Fund*'s 2000 Form 990, Part VI, Line 80a and 80b. The failure to disclose these relationships is material for the following reasons. *Sterling Charitable Gift Fund*'s primary asset in the year 2000 was 1,000 shares of *Mar-Jac Investments, Inc.* stock. Also, Georgia State corporation records reflect that *Sterling Management Group, Inc.* is the manager of HFC Feed Mill, LLC. *York Foundation*'s 2000 Form 990 shows that during the year 2000, *Mar-Jac Poultry* contributed its 100% interest in *HFC Feed Mill, LLC*, worth $4,402,000, to *York Foundation*.

146. The *SAAR Foundation*'s 1997-2000 Form 990 lists *Mirza* and *Sedky* as two of its three listed officers, directors, trustees, and key employees. *SAAR*'s 1997 and 1999 Forms 990 reflects the answer "yes" to question 80a, Part VI, but names only relationships with *SAAR* International (1997) and *Mar-Jac* Investments (1999). However, documents found in a settlement file for the sale of the real estate located at 555 and 585 Grove Street and 596 and 598 Grant Street, Herndon, VA, show that *Humana Charitable Trust* is an Isle of Man trust. The documents show that *Humana* was set up on November 12, 1997 by *Amana Limited*, with *Amana* being the original Trustee whose directors are *Mirza* and *Sedky*. The documents further indicate that *Amana Limited* is an Isle of Man corporation whose appointed officers are *Mirza*, *Sedky*, and

*M. Omar Ashraf.* The Forms 990 for *SAAR* fail to disclose this relationship. From 1997 through 2000, *SAAR* contributed the majority of its assets ($21.1 million) to *Humana Charitable Trust* but did not disclose the relationship between the donor (*SAAR* ) and the donee (*Humana*) on its Forms 990 as required.

147. *SAAR*'s 1996 Form 990 return lists *Mirza* and *Jaghlit* as two of its three officers, directors, trustees, and key employees. *SAAR*'s 1996 Form 990, Part VI, Question 80(a) reflects the answer "yes", but identifies only *SAAR* International DC, Inc. as a related organization. Yet, in 1996, *Mirza* and *Jaghlit* were also officers of *Safa Trust, Inc.* and of *Heritage Education Trust, Inc.* as evidenced by their respective Form 990s for 1996. These relationships are not disclosed in *SAAR*'s 1996 Form 990 return.

C. False Statements on Schedule A (Supplementary Information), <u>Form 990 Relating to Statements About Activities</u>

148. Section 501(c)(3) organizations must attach a completed Schedule A (Form 990-Supplementary Information) to their Form 990. Part III of Schedule A requests information about the organization's activities during the year. Question 2, Part III, Schedule A asks, "During the year, has the organization, either directly or indirectly, engaged in any of the following acts with any of its trustees, directors, officers, creators, key employees, or members of their families, or with any taxable organization with which any such person is affiliated as an officer, director, trustee, majority owner, or principal beneficiary:

a. Sale, exchange, or leasing of property?
b. Lending of money or other extension of credit?
c. Furnishing of goods, services, or facilities?
d. Payment of compensation (or payment or reimbursement of expenses if more than $1,000)?
e. Transfer of any part of its income or assets?

149. The Schedule A instructions specify that Part III, lines 2(a) through 2(e) apply to both sides of a listed transaction. Reporting is required, for example, whether the exempt organization is a payer or payee, buyer or seller, lender or borrower.

D. False Statements Relating to Question 2b, Part III, Schedule A – Lending of Money or Extension of Credit

1. *SAAR Foundation*

150. A review of the Forms 990 show that sometime prior to 1996, the *SAAR Foundation, Inc.* made a $15,000,000 loan to *Mar-Jac Investments, Inc.*, a taxable entity. On its 1997 Form 990, *SAAR* listed *Mar-Jac* Investments as a 100% subsidiary with assets of $11,500,000. This loan was carried as a loan receivable on *SAAR*'s Forms 990 for 1996 through 1998. Although the loan was not made during the years 1996 through 1998, *SAAR* continued to extend credit to *Mar-Jac* Investments during these years as a balance was still due. No interest rate is shown. On each of *SAAR*'s returns for 1996-98, however, the answer to Question 2(b), Part III, Schedule A (hereafter "Q2b") is "no".

151. These are false statements because Virginia State corporate records reflect that *Mirza* was a registered agent, director, president, and treasurer of *Mar-Jac* Investments from 1997-2000. *SAAR*'s 1996-2000 Forms 990 demonstrate that *Mirza* was the President, CEO, and Trustee of *SAAR* during those years. On its 2000 return, *SAAR* reported that its interest in *Mar-Jac Investments* had been contributed to *Sterling Charitable Gift Fund* but *Mirza,* who signed the Forms 990 for *SAAR* and for *Sterling*, concealed that he was on both ends of this transaction.

152. *SAAR*'s 1996 and 1997 Forms 990 also reflect a $109,890 demand loan made by *SAAR* to *Mar-Jac* Poultry. Again, the answer to Q2b is "no". This is a false statement because, according to State of Georgia corporation records, *Mirza* is an officer of *Mar-Jac Poultry, Inc.*

2. *Safa Trust*

153. *Safa Trust, Inc.*'s 1999 and 2000 Form 990 returns show that *Safa Trust* made a loan of $900,000 to *Reston Investments, Inc.*, a taxable entity, during 1999, the balance of which had increased to $1,364,972 by the end of the year 2000. In addition, *Safa Trust*'s 1998 Form 990 shows that it had a note payable (liability) to *Reston Investments, Inc.* in the amount of $352,857. *Barzinji, Mirza*, and *Al-Talib* were all officers of both *Safa Trust* and of *Reston Investments, Inc.* in 1998-2000, according to *Safa*'s Forms 990 and Virginia State corporation records. Yet, the *Safa Trust* Form 990s for 1998, 1999, and 2000, signed by *Mirza*, falsely show the answer "no" to Q2b.

154. In addition, *Safa Trust*'s Forms 990 reflect that it had also made a $263,000 working capital loan to *Grove Corporate, Inc.* in 1997 and a $500,000 loan to *Mar-Jac* Poultry sometime prior to 1996, the balance of which carried into 1996. *Mirza* was an officer of both of these taxable entities. *Barzinji* and *Al-Talib* were also officers of *Grove Corporate, Inc.* Yet, on *Safa*'s returns for 1996 and 1997, the answer to Q2b is falsely stated as "no".

E. False Statements Relating to Question 2a (Sale, exchange, or leasing of property) and 2e (Transfer of any part of income or assets), Part III, Schedule A

1. *African Muslim Agency*

155. 1998 and 1999 Forms 990 for the *African Muslim Agency* report that *Mar-Jac Poultry*, a taxable entity, donated $1,100,000 cash to the *African Muslim Agency* in 1998 and

$1,125,000 cash to the *African Muslim Agency* in 1999. Georgia State corporation records reflect that *Mirza* and *Al-Talib* were both officers of *Mar-Jac Poultry*. *African Muslim Agency*'s Form 990 shows both individuals were also officers of the *African Muslim Agency*. Yet, *African Muslim Agency*'s Forms 990 for 1998 and 1999 both answer "no" for question 2e. These are false statements since *Mar-Jac Poultry* transferred assets to *African Muslim Agency* while *Mirza* and *Al-Talib* were officers of both entities.

2. <u>*SAAR Foundation*</u>

156. *SAAR*'s 1999 Form 990 reflects that it invested $2,703,760 in corporate bonds of *Mar-Jac* Investments, a taxable entity. *Mirza* was the President, CEO, and a trustee of *SAAR* and the President, Treasurer, and a director of *Mar-Jac Investments*. *SAAR*'s 1999 return reflects the answer "no" to Questions 2a and 2e. These are false statements since *Mar-Jac Investments* sold corporate bonds to *SAAR* and *SAAR* transferred assets (i.e., funds) to *Mar-Jac Investments* to purchase the bonds.

3. <u>*Safa Trust*</u>

157. *Safa Trust*'s Forms 990 reflect that during 1997, *Safa* invested $2,000,000 in the corporate stock of *Grove Corporate, Inc.* According to Maryland State Personal Property Returns, *Barzinji*, *Mirza*, and *Al-Talib* were all officers of *Grove Corporate, Inc.* and of *Mena* Corporation, both taxable entities. According to *Safa*'s 1997 return, all three were also officers of *Safa Trust*. Yet, *Safa Trust*'s 1997 return reflects the answer "no" to Questions 2a and 2e. These are false statements since *Grove Corporate, Inc.* sold corporate stock to *Safa* and *Safa* transferred assets (i.e. funds) to *Grove Corporate* to purchase the stock.

4. <u>*York Foundation*</u>

158. *York Foundation*'s 2000 Form 990 shows that *Mar-Jac Poultry*, a taxable entity, donated 100% ownership of HFC Feed Mill, LLC, valued at $4,402,000, to *York Foundation*. *York*'s 1999 Form 990 shows that *Mar-Jac Poultry* donated $175,000 cash to *York* in 1999. Georgia State corporation records reflect that *Mirza* was an officer of *Mar-Jac Poultry*. *York*'s Forms 990 identifies *Mirza* as an officer of *York*. On *York*'s Forms 990 for 1999 and 2000, however, question 2e was answered "no". These are false statements since *Mar-Jac Poultry* transferred assets to *York Foundation* while *Mirza* was an officer of both *Mar-Jac Poultry* and *York*.

F. False Statements Relating to Contributions Received and Grants Made by Tax Exempt Organizations

1. *African Muslim Agency* and *IIIT*

159. The *African Muslim Agency*'s 1998 Form 990 reflects that it madc a $600,000 cash donation to *IIIT*. On its 1998 Form 990, however, *IIIT* only reported that it received a $370,000 contribution from *African Muslim Agency*. One or both of these returns are false statements. The *African Muslim Agency*'s 1997 Form 990 does not report making any donations to *IIIT* in 1997. However, *IIIT*'s Form 990 for 1997 shows that *African Muslim Agency* contributed $265,000 to *IIIT* in 1997. One of these is a false statement.

160. *IIIT*'s 1997 and 1998 returns appear to have been signed by *Al-Talib*. *African Muslim Agency*'s 1997 and 1998 returns were signed by *Mirza*.

2. *Safa Trust*

161. Between January 17, 1997, and July 1997, checks totalling $325,000 were drawn on the *Safa Trust, Inc.* bank account at First Union Bank and made payable to *HLF* - - the *HAMAS* front group. This amount is not reflected on *Safa Trust*'s 1997 Form 990 as a contribution. I believe that *Safa* did not mention this contribution on its return to make it less likely that law enforcement authorities would track money from *Safa* to *HLF*.

3. *Safa Trust* and *Heritage Education Trust*

162. On its 1996 Form 990, *Safa Trust* reported that it made grants and allocations of $3,602,009 to *Heritage Education Trust*. On *Heritage*'s 1996 Form 990, *Heritage* reported that it received $8,600,000 in contributions from *Safa Trust*. One of these returns is a false statement. *Safa*'s 1996 return was signed by *Mirza*. *Heritage*'s 1996 return was also signed by *Mirza*, who was *Heritage*'s Secretary, Treasurer, and Director in 1996.

4. *Safa Trust* and *IIIT*

163. On its Form 990 for 1997, *IIIT* reported that it received contributions of $522,007 from *Safa Trust* in 1997, but on its own Form 990, *Safa Trust* reported that it donated $585,649 to *IIIT* the same year. On its Form 990 for 1998, *IIIT* reported that it received contributions of $240,000 from *Safa Trust*, but *Safa Trust* reported that it only donated $159,178 to *IIIT* the same year. At least one of these returns is false. *Mirza* signed *Safa*'s Forms 990 for 1997 and 1998. *Al-Talib* appears to have signed *IIIT* Forms 990 for 1997 and 1998.

5. *Heritage Education Trust* and *SISS*

164. *Heritage Education Trust*'s 1996 Form 990 reflects that *Heritage* gave a grant/allocation of $800,000 in that year to its affiliate, *SISS*. In its 1996 Form 990, *SISS*

reported that it received only $450,000 in total contributions (contributors not shown) the same year, a difference of $350,000. One of these returns is false.

6. *SAAR and Safa*

165. A check written by *Mirza* from the account of *SAAR Foundation* to *All Dulles Area Muslim Society ("ADAMS")*; in the amount of $250,000, was deposited into a *Safa Trust* account on December 15, 1997. On *SAFA*'s 1997 Form 990, however, this amount is not reflected as a contribution received from either *ADAMS* or *SAAR*. Moreover, *Safa*'s 1997 Form 990 does not reflect any other transactional relationship with *ADAMS* or *SAAR* (i.e., a loan receivable or loan payable) that would explain the transaction. Furthermore, *SAAR*'s Form 990 for 1997 does not reflect a grant/allocation to either *ADAMS* or *SAFA* in 1997, not does *SAAR*'s return show any other transactional relationship with *ADAMS* or *Safa* (i.e. loan receivable or loan payable) that would explain the transaction. (*M. Omar Ashraf*, of *Sterling Charitable Gift Fund*, is listed as an officer of *ADAMS*).

XII. THE *SAAR* Audit

A. Observations of and Information Obtained from Auditors

166. In March of 1999 the Internal Revenue Service, Tax Exempt/Government Entities, Exempt Organizations Division began an audit of *SAAR*'s Forms 990 for the year 1997 and 1998. The audit concluded on February 21, 2001. At the conclusion of the audit the IRS issued a notification to *SAAR* that it was continuing to recognize its status as exempt pursuant to Section 501(c)(3). Revenue Agents Eugene Gilmartin and Michael Bieloski, who conducted the audit were interviewed by agents assigned to this investigation.

or other authority over any accounts in the name of *Humana Charitable Trust*, including Bank Leu, a foreign bank account and, accordingly, filed a materially false tax return for 1998 in that he failed to disclose on his return's Schedule B that he had signatory authority over a bank account in a foreign country.

191. Moreover, *Mirza* had control over the overseas bank accounts for the Isle of Man entities *Humana* and *York International Trust*.

192. On October 16, 1998, *Mar-Jac Holdings, Inc.* wrote a check to *York International Trust* in the amount of $54,327.83. The notation on the check evidenced a loan made to *Mar-Jac* Holdings, *Inc.* by *York International Trust*. The check was endorsed, "Pay to *Sterling Investment Group*," and signed by *Mirza*, trustee for *"York Int."*

193. A review of *Mirza*'s 1998 individual income tax return shows that *Mirza* failed to identify signature or other authority over a foreign bank account. On the basis of the foregoing evidence, I have probable cause to believe this is a materially false statement.

XV. Conclusions Regarding Offenses Committed

194. On the basis of the facts set forth in the foregoing affidavit, I have probable cause to believe that:

a. At all times relevant to this affidavit, *Al-Arian*, *WISE*, *ICP*, and *HLF* were fund raising fronts for *HAMAS* and *PIJ*.

b. *Al-Alwani*, *Barzinji*, *Jaghlit*, *Mirza*, and others in the *Safa* Group maintained a financial and ideological relationship with persons and entities (*WISE*, *ICP*, *HLF*, *Al-Arian*, *Nafi*, and Ramadan *Shallah* ) with known affiliations to the designated terrorist Groups *PIJ* and *HAMAS*.

c. *Al-Alwani*, *Barzinji*, *Jaghlit*, *Mirza*, and others in the *Safa* Group maintained their financial relationships with *WISE*, *ICP*, *HLF*, *Al-Arian*, *Nafi*, and *Shallah* through various members of the *Safa Group* particularly including *IIIT*.

d. Before search warrants were executed in 1995, the financial support provided to terrorist front-groups provided by the organizers of the *Safa Group* was sometimes relatively open and sometimes hidden.

e. After the search warrants were executed in 1995, the members of the *Safa Group* continued to ideologically support *HAMAS* and *PIJ* but generally did not provide overt financial support to those organizations.

f. After the search warrants were executed in 1995, the members of the *Safa Group* stopped providing open support to *HAMAS* and *PIJ*. Instead, they concentrated on routing financial support to those same organizations by layering financial transactions through charities and businesses within the *Safa Group* to conceal and disguise the fact that they were continuing to send money from the United States to the Middle East to fund international terrorism, in violation of 18 U.S.C. § 1956(a)(2), 18 U.S.C. § 2339A, and 18 U.S.C. § 2339B.

195. On the basis of the facts set forth in the foregoing affidavit, even if the *Safa Group* is not sending money to *HAMAS* and *PIJ*, I have probable cause to believe that *Abusulayman*, *Al-Alwani*, *Barzinji*, *Al-Talib*, *M. Omar Ashraf*, *Muhammad Ashraf*, *Jaghlit*, *Sedky*, *Ahmad Totonji*, and others, have engaged in a conspiracy to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service of the Department of the Treasury in the ascertainment, computation, assessment, and collection of federal income taxes, in violation of 18 U.S.C. §371, by -

a. Using the *Safa Charities* to take advantage of exemptions from federal income taxation while abusing the requirements for tax exempt status;

b. Using a web of corporate entities, both exempt and non-exempt, over which they exercised actual or effective control to move funds between entities, through a series of transactions designed to conceal the true nature, source, disposition and taxability of revenues moved between these entities; and

c. Misrepresenting the nature of the relationship between the *Safa Charities* and for-profit members of the *Safa Group* to avoid scrutiny of their financial transactions.

196. Further, I have probable cause to believe that *Mirza, Abusulayman, Al-Alwani, Barzinji, Al-Talib, M. Omar Ashraf, Muhammad Ashraf, Jaghlit, Sedky, Ahmad Totonji,* and others engaged in a scheme to file or cause the filing of materially false Forms 990 concealing the relationships between the *Safa Charities*, certain for-profit companies and the financial transactions between these related entities, all in violation of 26 U.S.C. § 7206(1) and (2).

197. Further, I have probable cause to believe that *Mirza* and *Qureshi* engaged in a corrupt endeavor to impede and impair the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a) during the *SAAR* audit by:

a. affirmatively misrepresenting the status of *SAAR Foundation* and the disposition of its assets;

b. concealing from the auditors the identity of *Sterling Charitable Gift Fund*, which was organized in March 2000, utilized the same address as *SAAR* and received *SAAR*'s major asset;

c. concealing the fact that *SAAR* maintained an active bank account until at least October 2001;

d. affirmatively misrepresenting that there was no overlapping of officers between *SAAR Foundation* and *Safa Trust, Inc.*, when *Mirza* was an officer of both *SAAR* and *Safa*;

e. affirmatively misrepresenting the relationship between *Al-Rahji* Charities and *SAAR*, by omitting that Abdul Rahman *Al-Rahji* is an officer of *Aradi, Inc.*, located at the same address as *SAAR*; and

f. concealing the relationship between *York Foundation* and *SAAR*.

198. Finally, I have probable cause to believe that *Al-Alwani, M. Omar Ashraf, Muhammad Ashraf, Mirza, Jaghlit, Barzinji, Totonji,* and *Al-Talib* each have willfully filed false individual income tax returns for the years 1997 and 1998 in violation of 26 U.S.C. § 7206(1) by

9. The Residence of *Totonji* at 305 Marjorie Lane, Herndon, Virginia; and

10. The Residence of *Unus* at 12607 Rock Ridge Road, Herndon, Virginia;

11. The Residence of *M. Omar Ashraf* at 12541 Browns Ferry Road, Herndon, VA;

12. The Residence of *Muhammad Ashraf* at 12528 Rock Ridge Road, Herndon, VA

all of which properties are more particularly described in Attachment A, which is incorporated herein.

WHEREFORE, your affiant requests that search warrants be issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

FURTHER THIS AFFIANT SAYETH NOT.

**SIGNATURE ON ORIGINAL**
DAVID KANE, Senior Special Agent
United States Customs Service

Subscribed to and sworn before me this ___ day of March 2002.

**SIGNATURE ON ORIGINAL**
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

Attachment A

1. 555 Grove Street, Office Suite Behind the Door Labeled 110, 114, and 116, Herndon, Virginia

555 Grove Street is a three-story brick, contemporary-style building with dark gray-tinted windows that extend continuously and horizontally along the length of the structure and each of the two floors that can be viewed from the street. Just above each of the windows on each floor there is beige trim that also extends continuously and horizontally along the entire length of the building. The building is marked by the numbers "555" in white directly above the front lobby door. The door leading to the office suite behind the door marked as the door for Suites 110, 114, and 116 in that building has on it a brass sign listing Mar-Jac Investments, Inc. 110, Reston Management, Inc. 114 and Sterling Management Group, Inc. 116.

2. 500 Grove Street, 2nd Floor, Herndon, Virginia

500 Grove Street is a three story, beige and dark brown brick colored, contemporary style building on the north side of Grove Street approximately 1/10th of a mile east of the intersection of Grove and Van Buren Streets. It has tinted windows that extend continuously and horizontally along the length of the structure and along each of the three floors viewable from the street. The building is marked by the numbers "500" on the front of the building. The building directory lists IIIT (International Institute of Islamic Though) as being located on the second floor.

3. 750-A Miller Dr. SE, Leesburg, Virginia

The building known as 750-A Miller Drive, SE, Leesburg, Virginia is a two-story red brick building with gray bricks across the top and two horizontal lines of gray bricks as an accent, on the west side of Miller Drive approximately ¼ mile from the intersection of Miller Drive and Sycolin Road SE. The building, which houses multiple commercial offices, is located directly across Miller Drive from the Leesburg Airport. The main entrance to the building has glass double doors with the numerals and letter "750-A" in white above the doors on a large plate of glass. Below "750-A" are white letters, which read, "School of Islamic and Social Sciences." In the front of 750-A, on the lawn, there is a black sign with the numerals and letter, "750-A" a green square portion with white letters stating, "School of Islamic and Social Sciences."

4. The Administrative Offices of Mar-Jac Poultry at 1020 Aviation Blvd., Gainesville, Georgia

Mar Jac-Poultry, with an address of 1020 Aviation Blvd., Gainesville, Georgia, is located on the northwest corner of Aviation Boulevard SW and Dorsey Street SW in Gainesville,

Georgia, just west of the Gainesville Airport and Aviation Boulevard, SW, south of the Georgia Department of Public Safety Drivers License Bureau, and east of railroad tracks. The plant, surrounded by a chain link fence, is comprised of numerous white and yellow buildings made of prefabricated materials. A brown tan stucco sign depicting a chicken with the letters "M/J" encased within a house-like emblem on its chest, and the words "Mar-Jac" written under the chicken, is located on the south end on the property facing Dorsey St., SW, just west of a gate into the property located on the SE corner of the property west of the intersection of Aviation Boulevard SW and Dorsey St. SW. The Administrative Offices of Mar-Jac Poultry are located in (1) a one-story building with a sign on it reading "Administrative Offices," located near the gate at the Northeast corner of the property. On the left side of the gate is a green and blue sign, with white letters, which reads, "All Visitors Must Report To Main Office". The sign on the north side of the gate is a red sign with white letters that reads, "Administrative Offices Only No Tractors-Trailers Allowed". The sign on the south side of the gate is of faded tan color with white letters that reads, "Administrative Offices Only No Tractors/Trailers Allowed."

5. The Residence of Mirza at 11922 Safa Court, Herndon, Virginia

The residence of Mirza is a beige-colored 1½-story house located at 11922 Safa Court, Herndon, Virginia 20170. The house is in the Shaker West Subdivision, on the north side of Safa Court approximately 1/10th of a mile from the intersection of Safa Court and Safa Street. The house is located next door to 11926. A red and white fire hydrant is next to the mailbox, which has the number 11922 and the name "Mirza" on it. The numbers 11922 are affixed to the house next to the garage.

6. The Residence of Jaghlit at 9034 Swift Creek Road, Fairfax Station, Virginia

The residence of Jaghlit is located at 9034 Swift Creek Road, Fairfax, Virginia 22039. A mailbox located at the very end of Swift Creek Road off of a cul-de-sac, and is identified by the number 9034. The site is a heavily wooded area and no house is visible from the cul-de-sac. The mailbox is positioned at the beginning of a long sand and gravel winding driveway. Two red "Posted - No Trespassing" signs are affixed to trees bordering the driveway. The driveway becomes blacktop as it nears a house. The house is a large two-story, symmetrical, modern design dwelling with large arch roofline over the center entrance. The house has gray siding, with black window shutters. Silver-colored stone surrounds the center area. The front door is red and surrounded by white wood trim. Brass numbers 9034 are vertically affixed to the white wood trim on the left side of the front door. A large inter-county power line is to the left of the dwelling. A two-car attached garage is on the right side of the dwelling with a white/cream colored garage door.

7. <u>The Residence of Barzinji at 11919 Safa Court, Herndon, Virginia</u>

The residence of Barzinji is located at 11919 Safa Court, Herndon, Virginia 20170. This residence is in the Shaker West Subdivision, on a pipe-stem private driveway off of Safa Court approximately 1/10th of a mile from the intersection of Safa Court and Safa Street. The house is a blue two-story wooden custom house with a brown front door with a large oval glass in the center. Before this house, there is a green sign on the right side of a private driveway which reads "11919, 11921, 11923" identifying the three houses on that private driveway. Houses 11921 and 11923 are identified by numbers affixed to the houses; house 11919 is the only house without a number and is located just past this sign, on the right side.

8. <u>The Residence of Al-Alwani at 1105 Safa Street, Herndon, Virginia</u>

The residence of Alwani, is located at 1105 Safa Street, Herndon, Virginia 20170. This residence is a contemporary two-story single family house situated on a semi-secluded lot, approximately ½ acre in size. It is the first house on the right side of Safa Street as one enters Safa Street northbound from Sugarland Road. The exterior of the house is constructed with tan siding and the front doors are gray. The address, 1105, is reflected both on the house (to the right of the two car garage) and on the mailbox.

9. <u>The Residence of Totonji at 305 Marjorie Lane, Herndon, Virginia</u>

The residence of Totonji is located at 305 Marjorie Lane, Herndon, Virginia 20170, approximately 1/10th of a mile to the east of the intersection of Marjorie Lane and Leona Lane. This structure is a two-story colonial with beige stucco front and a two-car garage. Numbers #305 are affixed above the garage door. The roof is made of three copper eaves. The front door is a single door, brown in color with a brown gated storm door. A brown mailbox is situated at the bottom of the driveway.

10. <u>The Residence of Unus at 12607 Rock Ridge Road, Herndon, Virginia</u>

The residence of Iqbal Unus is located at 12607 Rock Ridge Road, Herndon, Virginia 20170. The residence of is a two-story detached single family home with a two-car garage, immediately to the north of the intersection of Rock Ridge Road and Hawks Nest Court. The home has light-yellow vinyl siding and a light-brown shingled roof. The numbers 12607 are centered across the front porch of the residence.

11. The Residence of Mohammad Omar Ashraf
at 12541 Browns Ferry Road, Herndon, Virginia

The residence of Mohammad Omar Ashraf is located at 12541 Browns Ferry Road, Herndon, Virginia 20170. The residence is the last house on the left, prior to entering the cul-de-sac where the road ends. The residence is a two-story colonial-style house with white siding, black shutters, a covered porch, and a blacktop driveway from the street leading to a two-car attached garage. The number "12541" is on the curb of the residence, on the black mailbox located near the curb and on the house, to the right of the front door.

12. The Residence of Muhammad Ashraf
at 12528 Rock Ridge Road, Herndon, Virginia

The residence of Muhammad Ashraf is located at 12528 Rock Ridge Road, Herndon, Virginia 20170, between 12530 and 12526 on the north side of Rock Ridge Road between Cellar Creek Way and Dardanelle Road. The residence is a two-story single family residence with an attached two-car garage, the seventh home from either Cellar Creek Way or Dandanelle Road on Rock Ridge Road. The front of the residence is constructed of red brick on the lower half and yellow siding on the upper half. The front windows have gray shutters. The front entrance has a small stoop with a white post on the left. The number "12528" is stenciled on the white post of the stoop. A light post is located left of the driveway along the walkway toward the entrance of the residence. A mailbox is located curbside left of the driveway of the residence.

Attachment B

**Items to be Seized**

a. Any and all records including financial information, including tax returns and IRS filings, and any work papers related thereto; bank, credit or securities account statements, applications, deposit tickets, receipts, canceled checks, cashier checks, money orders, wire transfer records, debit/credit memos; financial ledgers, journals, investment records, real estate records, other records of assets; records of or related to contributions, grants or disbursements made or received, and/or allocations; loan records, financial statements, audit work papers, audit reports (or correspondence, transmittals or document related to any of the foregoing), regarding any or all of the following entities:

African Muslim Agency
Aradi, Inc.
FIQH Council
Grove Corporate, Inc.
Graduate School of Islamic Social Sciences (formerly SISS)
Heritage Education Trust
Humana Charitable Trust
International Institute of Islamic Thought
Mar-Jac Holdings, Inc.
Mar-Jac Investments, Inc.
Mar-Jac Poultry, Inc.
Mena Corporation
Reston Investments, Inc.
SAAR Foundation
SAAR International
Safa Trust
Sterling Charitable Gift Fund
Sterling Management Group, Inc.
York Foundation
York International

and/or any other entity sharing officers, directors, trustees, or employees with the listed entities ("the Safa Group"), and/or any other individual or entity designated as a terrorist by the President of the United States, the United States Department of Treasury, or the Secretary of State.

b. Any and all information regarding financial transfers of any kind undertaken by any officer, director, trustee, or employee of any member of the Safa Group, and any other individual or entity designated as a terrorist by the President of the United States, the United States Department of Treasury, or the Secretary of State. .

c. Any and all information referencing in any way PIJ, Hamas, Al-Qaida, WISE, ICP, Sami Al-Arian, Basheer Nafi, Mazen al-Najar, Ramallah Shallah, Khalil Shikaki, Sheik Odeh, Sheik Rahman, Usama Bin Laden, and any other individual or entity designated as a terrorist by the President of the United States, the United States Department of Treasury, or the Secretary of State.

d. Any and all corporate records for any member of the Safa Group, including articles of incorporation, corporate/organizational minute books, stock certificates, membership rosters, lease agreements and applications.

e. Any and all telephone bills and statements for any member of the Safa Group.

f. Any and all travel records - including itineraries and tickets/ticket copies for any officer, director, employee, or trustee of any member of the Safa Group.

g. Any and all correspondence referencing in any way PIJ, Hamas, Al-Qaida, WISE, ICP, Sami Al-Arian, Basheer Nafi, Mazen al-Najar, Ramallah Shallah, Khalil Shikaki, Sheik Odeh, Sheik Rahman, Usama Bin Laden, and any other individual or entity designated as a terrorist by the President of the United States, the United States Department of Treasury, or the Secretary of State.

h. Any individual income tax returns or other tax returns, and drafts or work papers or documentation related thereto, for or related to any officer, director, trustee or employee of the *Safa Group*.

i. Any and all financial documents related to the individual tax returns or other tax returns of Al-Alwani, M. Omar Ashraf, Muhammad Ashraf, Jaghlit, Barzinji, Totonji, and Mirza, and the returns of the Mirza Revocable Family Trust, Mirza Family Partnership, Jaghlit Family Trust No. 1, Jaghlit Family Trust No. 2.

j. Immigration documents related to WISE, ICP, Sami Al-Arian, Ramadan Shallah, Basheer Nafi, Mazen al-Najar, Khalil Shikaki, PIJ, HAMAS, Al-Qaida, any director, officer, trustee, or employee of any member of the Safa Group, and any individual or entity designated as a terrorist by the President of the United States, the United States Department of Treasury, or the Secretary of State.

k. Pamphlets, leaflets, booklets, video and audio tapes related to IIIT, WISE, ICP, Sami Al-Arian, Ramadan Abdullah Shallah, Mazen al-Najar, Khalil Shikaki, Basheer Nafi, PIJ, HAMAS, Al-Qaida, any officer, director, or employee of any member of the Safa Group, or any other individual or entity designated as a terrorist by the President of the United States, the United States Department of Treasury, or the Secretary of State, and any member of the Safa Group.

l. Personnel records identifying employees of WISE, ICP, or any member of the Safa Group, the dates of their employment, their areas of responsibility, and reasons for termination.

m. Diaries, organizers, day planners, appointment books, telephone message pads, address books and the like, for any any director, officer, trustee, or employee of any member of the Safa Group.

n. All identification documents reflecting the use of an alias, fictitious, or nominee name, including passports, social security cards, immigration papers (to include but not limited

to green cards, work permits, visa) drivers license (domestic or foreign), and state identification cards (domestic or foreign).

o. Contents of safes, lock boxes, file cabinets and other locked containers within the business and/or residence and information or keys regarding safe deposit boxes.

p. All computer and network equipment and peripherals, the software to operate them, and related instruction manuals to include the items listed below:

q. Any and all information and/or data stored in the form of magnetic, digital, or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes but is not limited to floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, videocassettes, and any other media, which is capable of storing magnetic coding.

r. Any and all electronic devices which are capable of analyzing, creating, displaying, converting, or transmitting electronic or magnetic computer impulses or data. These devices include but are not limited to computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives, and other computer related electronic devices.

s. Any and all instructions or programs stored in the form of electronic or magnetic media, which are capable of being interpreted by a computer, or related components. The items to be seized could include but would not be limited to operating systems, application software, utility programs, compilers, interpreters, and any other programs or software used to communicate with computer programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, DSL lines, cable lines, radio or other means of transmission.

t. Any and all written or printed material which provides instructions or examples concerning the operation of a computer system, computer software, and/or any related device.

**Attachment C**

## Safa Group Businesses & Corporations

A & W Stores, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 110, Herndon, VA
George, Jawad F. – Registered Agent

African Muslim Agency - Status: Active
555 Grove St., Herndon, VA (no suite #)
Alsumait, Adbulrahman - President
Altalib, Hisham - Treasurer
Mirza, M. Yaqub – Vice President

Al-Aqsa Educational Fund – Status: Active
PO Box 1124, Oxford, Mississippi 38655
Mushtaha, Fawaz – former director
Bushnaq, Yaser – former director
El-Gajleet(Jaghlit), Mohammad – former President
Al-Ashkar, Abdelhaleem – Vice President

Al-Wahvayn Publishing Company - Status: "Terminated (Automatic)"
555 Grove St., Suite 200, Herndon, VA
Aqeel, Abdul R. – President/Treasurer
Barzinji, Jamal - Secretary

All Dulles Area Muslim Society (ADAMS) - Status: Active
46970 Community Plaza, Suite 218, Sterling, VA
500 Grove St., Herndon, VA;
Alkhairo, Wael – President/Registered Agent
Ashraf, M. Omar – Registered Agent
Awand, Mazhar A. – Treasurer
Bari, Aziz – Secretary/Chairman
Jaka, Rizwan – Vice President
Khan, Bashir Ahmad – Treasurer/CFO
Khan, Mumtaz – President
Latib, Abdulrahman - Chairman
Manraj, Abdul Hafez – CFO
Noor, Ahmed - Treasurer
Rayyan, Ahmad I – Secretary/Officer
Salah, Said - Secretary
Unus, Iqbal J. – Vice President

Attachment C
Page 2

Altalib Family Limited Partnership – Status: Active
11776 Stratford House Pl.,#1403, Reston,VA
Altalib, Hisham Yahya – Registered Agent

AMC Foundation - Status: Active
555 Grove St., Suite 116, Herdon, VA
Ashraf, Muhammad - Registered Agent

Amana Limited
Isle of Man

Amana Mutual Funds
1300 North State Street, Bellingham, Washington

American Institute for Societal Studies - Status: Active
555 Grove St., Suite 116, Herdon, VA
Ashraf, Muhammad – President/Secretary/Treasurer
Altalib, Hisham – Registered Agent

American Products International, Inc. - Status: Active
11919 Safa Ct., Herndon, VA; 1162 (Registered Office)
Kandil, Osama – Registered Agent
Sadoun, Jamal - Director
Sadoun, Nabil – Director

American Projects Investments Corporation - Status: "Terminated (Automatic)"
555 Grove St., Suite 110, Herndon, VA
George, Jawad F. – Registered Agent

Arabic Software Computer, Inc. - Status: Inactive-Dissolved
555 Grove St., Suite 110, Herndon, VA
Ashraf, Mohammad Omar – President/Chairman
Iqbal, Mahamed – Registered Agent
Russel, William R. – Register Agent

Association of Muslim Social Scientists – Status: Active
1145 Herndon Pky, #500, Herndon, VA
Ahmad, Dr. Mumtaz – President
El-Ansary, Waleed – Treasurer
Haq, Faizan – Secretary
Safi, Dr. Louay – Vice-President
Abusulayman, Abdelhamid – former director

Attachment C
Page 3

Aradi, Inc. - Status: Active
555 Grove St., Suite 110, Herndn, VA;
Al-Rajhi, Abdullah Sulaiman – President
Altalib, Hisham – Vice-President/Treasurer
Sedky, Cherif – Secretary

Attia Grafisk USA, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Herndon, VA
Mohamed, Abla M. – President
Hadeed, Michael Jr., P.C. – Registered Agent

Beauregard Associates, LC - Status: Active
555 Grove St., Suite 104,Herdon, VA
Totonji, Irfan K. – Register Agent

Bone Shami Ventures, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 110, Herndon, VA
George, Jawad F. – Registered Agent

Capital Diamond Center, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 110, Herndon, VA
George, Jawad F. – Registered Agent

Child Development Foundation - Status: Active
555 Grove St., Suite 114, Herndon, VA
Abusulayman, Dr. Abdulhamid – President/Registered Agent
Altalib, Dr. Hisham – Vice-President/Treasurer
Unus, Dr. Iqbal J. – Secretary

Courtland Farm Conservancy Lots Homeowners Assn., Inc. - Status: Active
555 Grove St., Suite 112, Herndon, VA
Mirza, M. Yaqub – President/Treasurer
Ashraf, Muhammad – Secretary
Altalib, Hisham – Registered Agent

Creativity International Productions, LLC - Status: Canceled
555 Grove St., Suite 116, Herndon, VA
Mirza, M. Yacub – Registered Agent

Dar El-Eiman USA, Inc. - Status: Active
360 S. Washington St., Ste. 101, Falls Church, VA
Mushtaha, Fawaz - Registered Agent/President/Treasurer

Attachment C
Page 4

East Stratford Phase A & B Homeowners Association -- Status: Active
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K. – President/Registered Agent

Education, Training and Research Associates - Status: Active
Unus, Iqbal J. - Registered Agent

Elite Investment and Management Group, Inc. - Status: Active
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K. – President/Secretary/Treasurer/Registered Agent
Al Younes-Totonji, Ghazwa A. – Vice President

Elite Management Resources, Inc. - Status: "Terminated (Automatic)"
Totonji, Irfan K. – President/Secretary
Al-Hassan, Yazen M. – Vice-President/Treasurer/Registered Agent

Elite Trading and Contracting, Inc. - Status: "Terminated (Voluntary)"
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K. – President/Treasurer/Registered Agent
Almoayyad, Abdulelah, - Chairman
Alyounes-Totonji, Ghazwa – Vice President

Equity Investors Associates, Ltd. - Status: "Terminated (Automatiac)"
555 Grove St., Suite 110, Herndon, VA
George, Jawad F. – Registered Agent

Enterprise Investment Group, Inc. - Status: Active
12528 Rock Ridge Rd., Herndon, VA
Ashraf, Muhammad - Registered Agent

Executive Building Maintenance - Status: Active
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K. – President/Treasurer/Secretary/Registered Agent
Alyounes-Totonji, Ghawza – Vice-President
Almoayyad, Abdulelah – Chairman

FIQH Council of North America, Inc. - Status: Active
750-A Miller Dr., SE, Leesburg, VA
Al-Alwani, Taha J. - Registered Agent
Issam, Akkad - Treasurer

Ghazwa Associates, LLC - Status: Active
c/o Elite Investment & Management, 555 Grove St., Suite 104, Herndon, VA
Sanderson, Douglas J. – Registered Agent

Global Enterprises, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Global Holdings, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Graduate School of Islamic & Social Sciences - Status: Active
(Formerly known as The Islamic Institute of Advanced Studies [IIAS] and the School of Islamic and Social Sciences [SISS])
750-A Miller Dr., SE,Leesburg, VA
Al-Alwani, Taha J. - Registered Agent
Abusulayman, Dr. Abdulhamid - Secretary
Mirza, M. Yacub - Treasurer

Grove Corporate Plaza - Status: Active
555 Grove St., Suite 110, Herndon, VA
Mirza, M. Yaqub – President/Treasurer/Registered Agent
Ashraf, M. Omar – Vice-President/Secretary

Grove Street Corporation – Inactive
555 Grove Street, Herndon, Virginia
Al-Talib, Hisham
Ashraf, Omar

Heritage Education Trust, Inc. - Status: Active
750-A Miller Dr.,SE, Leesburg, VA
Jaghlit, Mohammad – Secretary/Treasurer/Registered Agent
Al-Alwani, Taha J. - President

Heritage Holdings - Status: Active
750-A Miller Dr., SE, Leesburg, VA
Al-Alwani, Taha J. - Registered Agent

Herndon Grand, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 205, Herndon, VA
Altalib, Hisham – President/Treasurer/Registered Agent
Totonji, Irfan – Vice-President
Ashraf, Muhammad – Secretary

HFC Feed Mill, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Home Owners of Mena Estates Association - Status: "Terminated (Automatic)"
555 Grove St., Herndon, VA
Barzinji, Jamal – Secretary
Estwani, Bassam – Treasurer
Becker, Larry E. – Registered Agent

Horizons Education Association - Status: Active
555 Grove St., Suite 116, Herndon, VA
Mirza, M. Yaqub – Registered Agent

Humana Charitable Trust c/o Amana Ltd.,
Abacus House, Mona Street, Douglas, Isle of Man
P.O. Box 1297, Herndon, VA

IFSO Training Bureau - Status: "Terminated (Automatic)"
555 Grove St., Herndon, VA
Kasule, Omar. H. – Registered Agent

Impact Training Center, Inc. - Status: "Terminated (Voluntary)
501 Merlins Lane, Herndon, VA
Salah, Samir I. – Registered Agent

International Education Trust, Inc. - Status: Active
9034 Swift Creek Rd., Fairfax Station, VA
Jaghlit, Mohammad – President/Treasurer/Registered Agent
Malkawi, Fathi – Vice-President/Secretary
Rashdan, Mahmouda – Vice-President

International Institution of Islamic Thought, Inc. - Status: Active
500 Grove St., Herndon, VA
Abusulayman, Abdulhamid – Chairman/President/Director
Al Alwani, Taha J. – Chief Financial Officer
Altalib, Hisham – Vice-President/Registered Agent
Barzinji, Jamal – Treasurer/Secretary/CFO
Jaghlit, Mohammad – President/Treasurer/Registered Agent

International Islamic Charitable Organization (IICO) - Status: Active
555 Grove St., Suite 116, Herndon, VA
Hassaballa, Ibrahim – Vice-President
Mirza, M. Yacub – Treasurer/Registered Agent
Mohamed, Mohieldin A. – Vice-President
Ashraf, Muhammad – Secretary

International Islamic Forum for Science, Technology and Human Resources Development, Inc. dba IIFTIKHAR - Status: Active
1145 Herndon Pky,#500A, Herndon, VA
Totonji, Dr. Ahmad – President
Barzinji, Dr. Jamal - Vice-President
Abusulayman, Dr. Abdulhamid - Chairman
Unus, Dr. Iqbal J. - Secretary/Treasurer/Registered Agent

International Relief Organization (a.k.a. International Islamic Relief Organization)
Status: Active
P.O.Box 8125, Falls Church, VA; 360 S. Washington St., Falls Church, VA; 5501 Backlick Rd., #220, Springfield, VA (Registered Agent)
Al Suwaidan, Tareq – Secretary/Treasurer
Al Sulaiman, Ali – President
Al Mahdi, Abdullah M. – Vice-President, Chief Financial Officer
Al Mahdi, Tareq M. – Secretary
Hadeed, Michael – Registered Agent
Omeish, Mohamed S. – President/Secretary

International Technology Marketing, Inc. Status: "Terminated (Automatic)"
501 Merlins Lane, Herndon, VA
Salah, Samir I. – Registered Agent

International Origin Solutions, LLC Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Jet Express, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 110, Herndon, VA
George, Jawad F. - Registered Agent

Jucosa USA, Inc. Status: Active
555 Grove St., Suite 116, Herndon, VA
(Registered Agent: 555 Grove St., Suite 114, Herndon, VA)
Uziel, Sergio Araya – President
Silva, Miguel Montes – Vice-President
Ashraf, M. Omar – Secretary/Treasurer
Mirza, Dr. M. Yacub – Chairman/Registered Agent

Latib International, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 110, Herndon, VA
George, Jawad F. – Registered Agent

Light Star Travel Agency, Inc.– Status: active
360 South Washington St., Ste. 102, Falls Church, Virginia 22046
Abdelellah, Aber – Vice Presdient
Mushtaha, Fawaz – President/Registered Agent

Lynx Holdings, Inc. - Status: "Terminated (Automatic)"
555 Grove St., (no suite #), Herndon, VA
Barzinji, Jamal – President
Mirza, M. Y. – Vice-President/Secretary
Altalib, Hisham – Treasurer/Registered Agent

Lynx Real Estate, Inc. - Status: "Withdrawn"
555 Grove St., 1st Floor, Herndon, VA
(Registered Agent) 555 Grove St., Suite 230, Herndon, VA
Altalib, Hisham Dr. – President/Treasurer/Registered Agent
Ashraf, Muhammad - Secretary

Makkah Mukarramah Charity Trust, Inc. - Status: "Terminated (Automatic)"
Almoayyad, Abdulelah – Vice President
Mirza, Yaqub – Secretary/Treasurer
Totonji, Ahmad – President

Mar-Jac Investments - Status: Active
555 Grove St., Suite 110, Herndon,VA
Mirza, M. Yacub – President/Treasurer/Registered Agent
Ashraf, M. Omar – Vice-President/Secretary

Mar-Jac Farms, Inc. - Status: "Merged"
P.O. Box 1017, Gainesville, GA
Al-Barzinji, Jamal Dr. – Chief Executive Officer
Al-Talib, Hisham Dr. – Chief Financial Officer
Mirza, M.Y. Dr. – Director
Mohamed, Mahmoud – Registered Agent

Mar-Jac Holdings, Inc. – Active
555 Grove Street, Herndon, Virginia
Safa Trust, Inc.

Mar-Jac Poultry, Inc. – Status: Active
Aviation Blvd., P.O. Box 1017, Gainesville, GA
Al-Barzinji, Jamal Dr. – Chief Executive Officer
Al-Talib, Hisham – Chief Financial Officer
Mirza, M.Y. Dr. – Secretary
Carnes, Doug – Registered Agent

Mena Corporation – Inactive
555 Grove Street, Herndon, Virginia

Mena Estates, Inc., DBA Mena for Development - Status: Active
555 Grove St., Suite 212, Herndon, VA
Barzinji, Jamal – President
Altalib, Hisham – Secretary/Treasurer/Registered Agent
Mirza, M. Yaqub – Vice-President

Mena Investments, Inc. - Status: Active
555 Grove St., (no suite #), Herndon, VA
Barzinji, Jamal – President
Altalib, Hisham – Secretary/Treasurer/Registered Agent
Mirza, M. Yaqub – Vice-President

Mirza Family Limited Partnership - Status : Active
11922 Safa Ct., Herndon, VA
Mirza, Tanveer A. – Registered Agent

Muslim World League - Status: Active
360 S. Washington St., #300, Falls Church, VA
(Registered Office: 555 Grove St., Suite 116), Herndon, VA)
Al Obaid, Dr. Abdullah Bin Saleh – President
Bahafzallah, Dr. Hassan A.A. – Vice-President
Mirza, Dr. M. Yaqub -- Secretary/Treasurer/Registere Agent

Newcom Investors, LLC - Status: anceled
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Noor International - Status:Active
12028 Waterside View Apt #12, Reston, VA
Yacoob, Snober - Registerd Agent
Mirza, Tanveer A. – Vice President/ Seretary/
Yacoob, Sanobar Akhtr -- President

Attachment C
Page 10

Ozaam Capital Management, Inc. - Status: Active
12541 Browns Ferry Rd., Herndon, VA
Ashraf, Mohammad O. - Registered Agent/President
Ashraf, Zabida P. - Secretary

Piedmont Medical Services, Inc. - Status: Active
501 Merlins Lane, Herndon, VA
Salah, Samir I. – Registered Agent/President/Secretary
Salah, Saniya S. - Vice-President

Properties Development Corp. - Status: "Revoked (Automatic)"
555 Grove St., (no suite #), Herndon, VA
Altalib, Dr. Hisham – President/Treasurer/Registered Agent
Ashraf, Muhammad – Secretary

R & S International, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 140, Herndon, VA
Yacoob, Sanobar A. – President
Irshad, Tariq M. – Secretary/Registered Agent
Lehan, Sultan A. – Treasurer

Reston Investments, Inc. - Status: Active
555 Grove St., Suite 114, Herndon, VA
Barjinji, Jamal - President
Mirza, Dr. M. Yaqub - Vice-President/Secretary
Altalib, Dr. Hisham - Treasurer

SAAR Foundation Canada, Inc.

SAAR Foundation, Inc. – Status: "Terminated (Voluntary)"
555 Grove St., Suite 110, Herndon, VA
Mirza, M. Yaqub – President/Chief Executive Officer/Registered Agent
Jaghlit, Mohammad - Treasurer
Sedky, Cherif – Secretary

SAAR International, Inc.
1212 New York Avenue, 12th Fl., Washington, DC
1212 New York Avenue, Inc.

Safa Trust - Status: Active
555 Grove St., Suite 114, Herndon, VA
Barzinji, Jamal – President
Mirza, M. Yaqub – Vice-President/Registered Agent
Altalib, Hisham – Treasurer
Totonji, Ahmad – Secretary

Safty, LLC - Status: Active
11922 Safa Court, Herndon, VA
Mirza, M. Yacub – Registered Agent

Sanabel Al Kheer, Inc. - Status: Active
555 Grove St., Suite 116, Herndon, VA
Al Obaid, Dr. Abdullah Bin Saleh – President
Bahafzallah, Dr. Hassan A.A. – Vice-President
Mirza, Dr. M. Yaqub – Secretary/Treasurer/Registered Agent

Sana-Bell, Inc. - Status: "Revoked (Automatic)"
555 Grove St., Suite 116, Herndon, VA
Obad, Bin Saleh L. – President
Bahafzallah, Hassan M. – Vice-President
Al Noshan, Abdullah M. – Treasurer
Mirza, M. Yacub – Secretary

Silicon Valley Venture Fund I, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Silicon Valley Venture Fund II, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Sterling Advisors, Inc. - Status: Active
555 Grove St., Suite 116, Herndon, VA
(Registered Office 555 Grove St., Suite 114, Herndon, VA)
Mirza, Dr. M. Yacub – Chairman/President/Chief Executive Officer
Ashraf, M. Omar – Executive Vice-Pres/President/Treasurer/Reg. Agent
Ashraf, Muhammad – Vice-President/Secretary

Sterling Charitable Gift Fund - No Record (VASOS)
Mirza, Yacub – President/CEO/Chairman
Ashraf, Muhammad – Vice-President/Secretary
Ashraf, M. Omar – Executive Vice-President/Treasurer/Reg. Agent
Zeki, Nabil A.M. – Vice-President

Attachment C
Page 12

Sterling Infogain, Fund, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Sterling Investment Group, LLC - Status: Active
555 Grove St., Suite 110, Herndon, VA
Ashraf, Muhammad – Registered Agent

Sterling Lynux Works, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

Sterling Management Group, Inc. - Status: Active
555 Grove St., Suite 116, Herndon, VA
Mirza, Yacub – President/CEO/Chairman
Ashraf, Muhammad – Vice-President/Secretary
Ashraf, M. Omar – Executive Vice-President/Treasurer/Reg. Agent
Zeki, Nabil A.M. – Vice-President

Sterling Packet Stream Fund, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad - Registered Agent

Sterling Ptech Fund, LLC - Status: Active
555 Grove St., Suite 114, Herndon, VA
Ashraf, Muhammad – Registered Agent

Sterling Poultry Company - Status: "Terminated (Voluntary)"
555 Grove St., (no suite #), Herndon, VA
Barzinji, Jamal – President
Mirza, M. Yacub – Vice-President/Secretary/Registered Agent
Altalib, Hisham - Treasurer

Sterling Stock Invesments, LLC- Status: "Canceled"
555 Grove., Suite 114, Herndon, VA
Ashraf, M. Omar – Registered Agent

Sterling Technology Fund, LLC - Status: Active
Formerly: Sterling Malaysian Fund, LLC
555 Grove St., Suite 116, Herndon, VA
Mirza, M. Yacub – Registered Agent

Stratford Associates, LC - Status: Active
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K. / Elite Investment & Mgmt Group – Registered Agent

Stratford Commercial Associates, L.C - Status: "Canceled"
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K./Elite Investments & Mgmt Group – Registered Agent

Stuart Road Associates, LC - Status: "Active"
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K./Elite Investments & Mgmt Group – Registered Agent

The Success Foundation, Inc.
3606 Forest Drive, Alexandria, Virginia 22302; 360 South Washington St., Ste. 300
Falls Church, Virginia 22046
Omeish, Mohamed – President
Alamoudi, Abdulrahman – Secretary
Nouri, Khaled - Treasurer

Sugarland Road Development, LLC - Status: Active
447 Carlisle Dr., Herndon, VA
(Registered Office: 56970 Community Plaza, Suite 218, Sterling, VA)
Ashraf, M. Omar – Registered Agent

Tafy Enterprises, Inc. - Status: Active
11922 Safa Court, Herndon, VA
Mirza, Tanveer A. - President/Secretary/Registered Agent
Mirza, M. Yaqub - Treasurer

Taibah International Aid Association - Status: Active
360 S. Washington St., #104, Falls Church, VA
Al-Almoudi, Abdul Rahman - Director
Hajjaj, Anwar - Vice-Chairman/Registered Agent
Salah, Samir - Treasurer

Union Capital Corporation - Status: Active
12541 Browns Ferry Rd., Herndon, VA
Ashraf, Mohammad O. – Registered Agent

United Investments Group, Inc. - Status: "Terminated (Automatic)"
555 Grove St., Suite 110C, Herndon, VA
Ashraf, Muhammad – Registered Agent

Vale Ridge Associates, LC - Status: Canceled
555 Grove St., Suite 104, Herndon, VA
Totonji, Irfan K. dba Elite Investments & Mgmt Group – Registered Agent

Virginia American Properties, Inc. - Status: "Terminated (Voluntary)"
555 Grove Street, Herndon, VA
Altalib, Hisham – President/Treasurer/Registered Agent
Ashraf, Muhammad - Secretary

Woodland Development, LLC - Status: "Canceled"
555 Grove St., Suite 110, Herndon, VA
Mirza, M. Yacub – Registered Agent

York Foundation - Status: Active
555 Grove St., Suite 114, Herndon, VA
Mirza, M. Yacub – President/Treasurer/Registered Agent
Ashraf, Muhammad – Secretary

York International – Active
Isle of Man

500 Grove Street, LLC - Status: Active
555 Grove St., Suite 116, Herndon, VA
Ashraf, Muhammad – Registered Agent

## ATTACHMENT D

**Safa Group**
**Officers and Directors & Their Related Businesses and Organizations**

| Name Of Officer | Associated/Related Corporation/Business |
|---|---|
| **Abdelellah, Aber** | Light Star Travel |
| **Abusulayman, Abdulhamid** | Child Development Foundation<br>IIIT<br>GSISS<br>International Islamic Forum for Science, Technology & Human Resources Development, Inc. (IIFTIKHAR) |
| **Ahmad, Mumtaz** | Assn of Muslim Social Scientists |
| **Ahmed, Gamal** | Boshra, Inc. |
| **Al Almoudi, Abdul Rahman** | Taibah International Aid Association<br>Success Foundation<br>American Muslim Foundation American Muslim Council |
| **Al Alwani, Taha J.** | IIIT<br>FIQH<br>GISS<br>Heritage Education Trust Inc.<br>Heritage Holdings |
| **Al Ashkar, Abdelhaleem** | Al-Aqsa Educational Fund |
| **Al Hassan, Yazen M** | Elite Management Resources, Inc. |
| **Al Mahdi, Abdullah M.** | International Relief Organization |
| **Al Mahdi, Tareq M.** | International Relief Organization |
| **Al Noshan, Abdullah M.** | Sana-Bell, Inc. |
| **Al Obaid, Abdullah Bin Saleh** | Muslim World League<br>Sana-Bell, Inc.<br>Sanabel Al Kheer, Inc. |

| | |
|---|---|
| **Al Rajhi, Abdullah Sulaiman** | Aradi, Inc. |
| **Al Sulaiman, Ali** | International Relief Organization |
| **Al Suwaidan, Tareq** | International Relief Organization |
| **Al Younes-Totonji, Ghazwa A.** | Elite Investment & Management Group Inc.<br>Elite Training & Contracting Inc.<br>Executive Building Maintenance |
| **Alkhairo, Wael** | All Dulles Area Muslim Society |
| **Almoayyad, Abdulelah** | Elite Training & Contracting Inc.<br>Executive Building Maintenance<br>Makkah Mukarramah Charity Trust |
| **Alsumait, Adbulrahman** | African Muslim Agency |
| **Altalib, Hisham** | Aradi Inc.<br>African Muslim Agency<br>Altalib Family Limited Partnership<br>American Institute for Islamic Societal Studies<br>Child Development Foundation<br>Courtland Farm Conservancy Lots Homeowners Assn., Inc.<br>Herndon Grand, Inc.<br>IIIT<br>Lynx Holdings Inc.<br>Lynx Real Estate Inc.<br>Mar-Jac Farms, Inc.<br>Mar-Jac Poultry, Inc.<br>Mena Estates Inc., DBA Mena for Development<br>Mena Investments Inc.<br>Properties Development Corp.<br>Reston Investments Inc.<br>Safa Trust<br>Sterling Poultry Co.<br>Virginia American Properties Inc. |
| **Aqeel, Abdul R.** | Al-Wahyayn Publishing Co. |

| | |
|---|---|
| **Ashraf, M. Omar** | All Dulles Area Muslim Society<br>Arabic Software Computer, Inc.<br>Grove Corporate Plaza<br>Jucosa USA, Inc.<br>Mar-Jac Investments Inc.<br>Ozaan Capital Management, Inc.<br>Sterling Advisors Inc.<br>Sterling Management Group<br>Sterling Stock Investments LLC<br>Sugarland Road Development Inc.<br>Union Capital Corporation |
| **Ashraf, Muhammad** | AMC Foundation Inc.<br>American Institute for Islamic Societal Studies<br>Courtland Farm Conservancy Lots<br>Homeowners Association Inc.<br>Herndon Grand Inc.<br>HFC Feed Mill LLC<br>Enterprise Investment Group Inc.<br>Global Enterprises LLC<br>Global Holdings LLC<br>International Islamic Charitable Organization<br>International Origin Solutions LLC<br>Lynx Real Estate Inc.<br>Newcom Investors LLC<br>Properties Development Corporation<br>Silicon Valley Venture Fund I, LLC<br>Silicon Valley Venture Fund II, LLC<br>Sterling Advisors Inc.<br>Sterling Infogain Fund LLC<br>Sterling Investment Group LLC<br>Sterling Lynux Works LLC<br>Sterling Management Group Sterling<br>Packet Stream Fund, LLC<br>Sterling Ptech Fund, LLC<br>United Investment Group<br>Virginia American Properties, Inc.<br>York Foundation<br>500 Grove Street LLC |
| **Ashraf, Zahida P.** | Ozaan Capital Management Inc. |
| **Awand, Mazhar A.** | All Dulles Area Muslim Society |

Attachment D
Page 4

| | |
|---|---|
| **Babafzallah, Hassan A.A.** | Muslim World League<br>Sana-Bell Inc.<br>Sanabel Al Kheer Inc. |
| **Bari, Aziz** | All Dulles Area Muslim Society |
| **Barzinji, Jamal** | Al-Wahyayn Publishing Company<br>Home Owners of Mena Estates Assn.<br>Heritage Holdings<br>IIFSTHRD<br>Lynx Holdings Inc.<br>Mar-Jac Farms, Inc.<br>Mar-Jac Poultry, Inc.<br>Mena Estates, Inc.<br>Mena Investments Inc.<br>Home Owners of Mena Estates Assn.<br>Reston Investments Inc.<br>Safa Trust<br>Sterling Poultry Company<br>American Muslim Council |
| **Becker, Larry E.** | Mena Estates Assn. |
| **Bushnaq, Yaser** | Al-Aqsa Educational Fund |
| **El Ansary, Waleed** | Association of Muslim Social Scientists |
| **Estwani, Bassam** | Boshra, Inc.<br>Home Owners of Mena Estates Association |
| **George, Jawad F.** | A & W Stores Inc.<br>American Projects Investments, Corporation<br>Bone Shami Venture<br>Capital Diamond Center<br>Equity Investors Associates Ltd.<br>Jet Express Inc.<br>Latib International Inc. |
| **Hadeed, Michael Jr.** | Attia Grafisk USA Inc.<br>International Relief Organization |
| **Hajjaj, Anwar** | Taibah International Aid Association |

Attachment D
Page 5

| | |
|---|---|
| **Hansen, David** | Courtland Farm Homeowners Assn. |
| **Haq, Faizan** | Association of Muslim Social Scientists |
| **Hassaballa, Ibrahim** | International Islamic Charitable Organization |
| **Holt, James W.** | Courtland Farm Homeowners Assn. |
| **Iqbal, Mahamed** | Arabic Software Computer, Inc. |
| **Irshad, Tariq M.** | R & S International, Inc. |
| **Isam, Akkad** | FIQH Council of North America |
| **Jaghlit, Mohammad** | International Education Trust, Inc.<br>Heritage Education Trust Inc.<br>Heritage Holdings<br>SAAR Foundation Inc.<br>Al-Aqsa Educational Fund |
| **Jaka, Rizwan** | All Dulles Area Muslim Society |
| **Kandil, Osama** | American Products International |
| **Kasule, Omar H.** | IFSO Training Bureau |
| **Khan, Bashir Ahmad** | All Dulles Area Muslim Society |
| **Khan, Mumtaz** | All Dulles Area Muslim Society |
| **Kline, Bradford S.** | Courtland Farm Homeowners Assn. |
| **Latib, Abdulrahman** | All Dulles Area Muslim Society |
| **Leban, Sultan A.** | R & S International Inc. |
| **Malkawi, Fathi** | International Education Trust Inc. |
| **Manraj, Abdul Hafez** | All Dulles Area Muslim Society |

Attachment D
Page 6

| | |
|---|---|
| **Mirza, M. Yaqub** | African Muslim Agency<br>Courtland Farms Homeowners Association Inc.<br>Horizons Education Association Creativity<br>International Productions, LLC<br>GSISS<br>Grove Corporate Plaza<br>Jucosa USA, Inc.<br>Lynx Holdings Inc.<br>Mar-Jac Investments<br>Mar-Jac Farms Inc.<br>Mar-Jac Poultry Inc.<br>Makkah Mukarramah Charity Trust<br>Mena Estates Inc. DBA Mena for Development<br>Mena Investments Inc.<br>Mirza Family Limited Partnership<br>Muslim World League<br>Reston Investments Inc.<br>SAAR Foundation Inc.<br>Safa Trust Inc.<br>Safty LLC<br>Sanabel Al Kheer Inc.<br>Sana-Bell Inc.<br>Sterling Advisors Inc.<br>Sterling Management Group<br>Sterling Poultry Company<br>Sterling Technology Fund LLC<br>Tafy Enterprises Inc.<br>Woodland Development LLC<br>York Foundation |
| **Mirza, Tanveer A.** | Mirza Family Limited Partnership<br>Noor International<br>Tafy Enterprises |
| **Mohamed, Alba M.** | Attia Grafisk USA, Inc. |
| **Mohamed, Mahmoud** | Mar-Jac Farms, Inc. |
| **Mohamed, Mohieldin A.** | International Islamic Charitable Organization |
| **Mushtaha, Fawaz** | Dar El-Eiman USA Inc.<br>Light Star Travel Agency<br>Al-Aqsa Educational Fund |

| | |
|---|---|
| **Noor, Ahmed** | All Dulles Area Muslim Society |
| **Omeish, Mohamed S.** | International Relief Organization (IRO)/International Islamic Relief Organization(IIRO)/ Success Foundation |
| **Rashdan, Mahmouda** | International Education Trust Inc. |
| **Rayyan, Ahmad I.** | All Dulles Area Muslim Society |
| **Safi, Lousy** | Association of Muslim Social Scientists (AMSS) |
| **Salah, Said** | All Dulles Area Muslim Society |
| **Salah, Samir I.** | Impact Training Center Inc.<br>International Technology Marketing<br>Piedmont Medical Services<br>Taibah International<br>SAAR Foundation<br>Mar-Jac Investments<br>Piedmont Trading<br>Piedmont Management<br>Piedmont Medical<br>Marwa Investments<br>All Dulles Area Muslim Society |
| **Salah, Saniyz S.** | Piedmont Medical Services, Inc. |
| **Sedky, Cherif** | Al-Murjan Corporation<br>Aradi Inc.<br>SAAR Foundation Inc.<br>Courtland Farm Conservancy<br>Nimir Petroleum<br>Yeminvest |
| **Silva, Miguel Montes** | Jucosa USA Inc. |
| **Totonji, Irfan K.** | Beauregard Associates LLC<br>Herndon Grand Inc.<br>East Stratford Phase A & B Homeowners Ass'n<br>Elite Investment & Management Group Inc.<br>Elite Management Resources Inc.<br>Elite Training & Contracting Inc.<br>Executive Building Maintenance |

| | |
|---|---|
| **Totonji, Ahmad** | IIIT<br>IIFTIKHAR<br>Makkah Mukarramah Charity Trust |
| **Unus, Iqbal J.** | All Dulles Area Muslim Society<br>Child Development Foundation<br>Education, Training & Research Associates<br>IIFTIKHAR |
| **Uziel, Sergio Araya** | Jucosa USA, Inc. |
| **Yacoob, Sanobar** | R & S International Inc.<br>Noor International |
| **Yacoob, Snober** | Noor International |
| **Zeki, Nabil A.M.** | Sterling Management Group |

Attachment E

**Glossary of Terms, Individuals, and Organizations Relevant To This Affidavit**

Abusulayman, Abdulhamid - President of IIIT and associated with other Safa Group entities, Abusulayman shared ideological affinities with PIJ fund raiser Sami Al-Arian.

African Muslim Agency – Safa Group entity located on "paper" at 555 Grove Street, Herndon, Virginia, operated by Al-Talib and Mirza.

Al-Alwani, Taha Jaber Officer or director of IIIT, FIQH, GSISS and other Safa Group entities. Al-Alwani shared ideological affinities with PIJ fund raiser Sami Al-Arian.

Al-Arian, Sami – Al-Arian is a PIJ fund raiser in Tampa Florida, who founded ICP and WISE, and authored the PIJ manifesto found in the search warrant at his house in 1995.

Al-Aqsa Educational Fund – Mohammed Jaghlit was the president of this charity, which raised funds for HAMAS.

Al-Fawwaz, Khalid – An aide of Osama Bin Laden, Al-Fawwaz is an SDT and is awaiting extradition to the United States for his part in the Embassy Bombings.

Alamoudi, Abdulrahman – Director of the American Muslim Council, the American Muslim Foundation, and many other Islamic fundamentalist organizations.

Ali, Ahmed Mohammed – The Secretary General of the Muslim World League (MWL). Ali publicly stated that the International Islamic Relief Organization is the "operational arm" of the MWL.

All Dulles Area Muslim Society (ADAMS) – A member of the Safa Group that transferred large amounts of money to other members of the Safa Group.

Alshehri, Fayez Ahmed – September 11, 2001 hijacker who worked for the International Islamic Relief Organization in the United States.

Al-Rajhi, Abdullah Sulaiman – Safa Group member and member of wealthy Al-Rajhi family in Saudi Arabia. He is also a director of Aradi, Inc. at 555 Grove Street, Herdon, Virginia

Al-Rajhi Charity – An alleged charity operated by the Al-Rajhi family in Saudi Arabia.

Al-Rajhi Commercial and Foreign Exchange – Business operated by members of the Al-Rajhi family in Saudi Arabia.

Al-Rajhi, Sulaiman Abdul Aziz – Founder and head of the Al-Rajhi conglomerate in Saudi Arabia, and the namesake of the SAAR Foundation.

Al-Shifa Pharmaceutical Industries Company – Company located in Khartoum, Sudan which was the subject of a U.S. cruise missile attack on August 20, 1998 for its involvement in the Embassy bombings in Tanzania and Kenya.

Al-Talib Family Limited Partnership – Limited partnership operated by Hisham Al-Talib and incorporated at his home residence, 11776 Stratford House Pl., Suite 1403, Reston, Virginia.

Al-Talib, Hisham – Officer or director of various Safa Group entities, Al-Talib shared ideological affinities with PIJ fund raiser Sami Al-Arian.

Alamoudi, Abdurahman – Safa Group member and current director of the Success Foundation, the American Muslim Foundation, and the American Muslim Council, among others. Previous director of the SAAR Foundation. Was recorded on video during a year 2000 Islamic rally in Lafayette Park, Washington, D.C. stating that he supported HAMAS and Hezbollah.

Amana Limited – Safa Group corporation located in the Isle of Man.

Amana Mutual Funds Trust – Safa Group mutual fund company.

Aradi, Inc. – "Safa Group" corporation located on "paper" at 555 Grove Street, Herndon, Virginia. Operated by Cherif Sedky, Abdullah Sulaiman Al-Rajhi and Hisham Al-Talib.

Ashraf, M. Omar – Officer and/or director of Mar-Jac Investments, Sterling Charitable Gift Fund, and other companies listed in Attachment C.

Ashraf, Muhammed – Officer and/or director of Courtland Farm Conservancy Lots Homeowners Association, Inc., International Islamic Charitable Organization, Sterling Charitable Gift Fund, Sterling Management Group, and others entities listed in Attachment C.

Atef, Mohammed – A high-ranking Al-Qaida member and designated terrorist who was killed by U.S. forces in the war on terrorism in 2001.

Barzinji, Jamal - Officer or director of various Safa Group entities. Barzinji shared ideological affinities with PIJ fund raiser Sami Al-Arian.

Bin Laden, Osama/Usama – Islamic fundamentalist terrorist and founder of Al-Qaida who has orchestrated several terrorist attacks, including the attacks on the World Trade Center and Pentagon. Bin Laden is a designated terrorist and the FBI's #1 most wanted person.

Child Development Foundation – "Safa Group" organization located at 555 Grove Street, #114, Herndon, Virginia, operated by Abdulhamid Abusulayman, Hisham Al-Talib and Iqbal Unus.

Courtland Farm Conservancy Lots Homeowners Association, Inc. - "Safa Group" organization located at 555 Grove Street, #112, Herndon, Virginia, operated by Muhammad Ashraf, Yacub Mirza and Hisham Al-Talib.

El-Khatib, Mohammed Taysir – member of the PIJ Shura Council.

Elbarasse, Ismail – Directed funds for HAMAS through confessed HAMAS member Mohammed Salah.

Elite Investment and Management Group, Inc. – "Safa Group" corporation located at 555 Grove Street, #104, Herndon, Virginia, and operated by Ghazwa Al Younes-Totonji and Irfan Totonji.

Elite Trading and Contracting, Inc. - "Safa Group" organization located at 555 Grove Street, #104, Herndon, Virginia, and operated by Abdulelah Almoayyad, Ghazwa Alyounes-Totonji, and Irfan Totonji.

FIQH Council of North America, Inc. – "Safa Group" corporation located at 750-A Miller Dr., SE, Leesburg, Virginia, operated by Taha Al-Alwani.

Foreign Terrorist Organization (FTO) Terrorist organization as designated the U.S. Department of State.

Graduate School of Islamic and Social Sciences (GSISS) – "Safa Group" corporation located at 750-A Miller Drive, SE, Leesburg, Virginia, operated by Taha Al-Alwani. Formerly known as the Islamic Institute of Advanced Studies (IIAS)/School of Islamic and Social Sciences (SISS).

Grove Corporate Plaza – "Safa Group" corporation located at 555 Grove Street, #110, Herndon, Virginia, operated by Omar Ashraf and Yaqub Mirza..

Grove Street Corporation -- Safa organization previously located at 555 Grove Street.

HAMAS Terrorist Group – a/k/a Islamic Resistance Movement. HAMAS is a Designated Terrorist Organization that is responsible for numerous terrorist attacks that have resulted in the death of innocent civilians, including American nationals.

Hamdi, Tariq Abdulmelik (a/k/a Tariq Hamdi Ismael Azami) - Employed by IIIT, Hamdi delivered a satellite telephone battery to an aide to Bin Laden in May 1998, that enabled Bin Laden to communicate with his followers in preparation for the Embassy Bombings in Kenya and Tanzania.

Hassaballah, Ibrahim - Director of International Islamic Charitable Organization (IICO), along with Muhammad Ashraf, Yaqub Mirza and Mohieldin Mohamed. Currency and Monetary Instrument

Reports (CMIRs) registered on Hassaballah show that he has moved large amounts of currency into the United States from abroad, including over $3 million on one occasion in the early 1980s.

Hassan, Beverly – The custodian of records on various Safa Group 990s.

Heritage Education Trust, Inc. – "Safa Group" corporation located at 750-A Miller Drive, SE, Leesburg, Virginia, operated by Mohammed Jaghlit.

HFC Feed Mill, LLC – Safa Group corporation located at 555 Grove Street, Herndon, Virginia, managed by Muhammad Ashraf

Holy Land Foundation (HLF) – A Designated Terrorist Organization. The HLF's primary purpose is to fund HAMAS.

Home Owners of Mena Estates Association – "Safa Group" organization previously located at 555 Grove Street, Herndon, Virginia, and operated by Jamal Barzinji and Bassam Estwani.

Hozien, Wafa - Wife of Tariq Hamdi.

Humana Charitable Trust – Safa Group organization located in the Isle of Man. Large amounts of Safa Group money are sent to this entity.

International Education Trust, Inc. - "Safa Group" corporation located at the residence of Mohammad Jaghlit.

International Institute of Islamic Thought (IIIT) – IIIT is a core member of the Safa Group. Employs Tariq Hamdi. Corresponded directly with Al-Arian's groups in Tampa.

International Islamic Charitable Organization (IICO) – "Safa Group" corporation located at 555 Grove Street, #116, Herndon, Virginia, operated by Muhammad Ashraf, Ibrahim Hassaballa, Yaqub Mirza and Mohieldin Mohamed.

International Islamic Relief Organization (IIRO) – A subsidiary of the Muslim World League.

International Relief Organization (IRO) – Variation of IIRO.

Intifadah – Uprising in Israel and the Palestinian Authority Controlled Areas by the Palestinians. The Jihad Intifadah refers to an armed struggle as it relates to the "Holy War" against the infidels, which are considered the Jews, Christians (the West), and complacent Arab regimes. The main scope of the Intifadah is to drive the Israelis out of Israel and to reclaim the Palestinian homeland.

Attachment E
Page 5

Islamic Committee for Palestine (ICP) - a/k/a Islamic Concern Project. ICP was a Palestine Islamic Jihad front organization operated and incorporated by Sami Al-Arian in close relationship with World Islamic Studies Enterprise (WISE).

Islamic Concern Project (ICP) - a/k/a Islamic Committee for Palestine. ICP is a Palestine Islamic Jihad front organization incorporated by Sami Al-Arian in close relationship with World Islamic Studies Enterprise (WISE).

Islamic Jihad of Palestine – another variation of the Palestinian Islamic Jihad.

Islamic Relief Organization (IRO) – Same entity as International Islamic Relief Organization/Success Foundation.

Islamic Resistance Movement – HAMAS

Islamic Studies Enterprise (ISE) – An Islamic organization linked to Sami Al-Arian and the PIJ..

Jabala, Mohamoud – Suspected Egyptian militant who worked for the International Islamic Relief Organization (IIRO). Jabala is currently incarcerated in Canada, awaiting trial on terrorism charges.

Jaghlit, Mohammad Officer or director of various Safa Group entities. Jaghlit shared ideological affinities with PIJ fund raiser Sami Al-Arian and also with HAMAS.

Jaghlit Family Trust Number 1/Number 2 – Family Trusts used by Safa Group member Mohammad Jaghlit.

Khaleel, Ziyad - A Designated Terrorist. Purchased satellite telephone battery for Osama Bin Laden that allegedly facilitated the Al-Qaeda attack on the U.S. embassies in Tanzania and Kenya.

Khalifa, Mohammed Jamal - Brother-in-law of Osama Bin Laden involved in secessionist militant movement in the southern Philippines.

Makkah Mukarramah Charity Trust, Inc. – "Safa Group" charity which was previously located at 555 Grove Street, Herndon, Virginia and operated by Abdulelah Almoayyad, Yaqub Mirza and Ahmad Totonji.

Mar-Jac Holdings, Inc. – Subsidiary of Safa Trust, Inc., used for transferring large amounts of funds between various Safa Group organizations.

Mar-Jac Poultry, Inc. – Poultry farm and producing plant in Gainesville, Georgia controlled by the Safa Group.

Mar-Jac Investments, Inc., Safa Group corporation managed by M. Omar Ashraf and Yaqub Mirza.

Mar-Jac Farms – "Safa Group" organization operated by Barzinji, Al-Talib, and Mirza.

Marzook, Mousa Abu (SDT) – Current head of HAMAS, Marzouk is a Specially Designated Terrorist.

Mena Corporation – Safa Group organization.

Mena Investments, Inc. - Safa Group corporation located at 555 Grove Street, Herndon, Virginia, managed by Al-Talib, Barzinji and Mirza.

Mirza, M. Yaqub - Officer or director of numerous Safa Group entities, including African Muslim Agency, Courtland Farm Conservancy, Grove Corporate Plaza, International Islamic Charitable Organization, Makkah Mukarramah Charity Trust, Mar-Jac Investments, Muslim World League, Reston Investments, Sana-Bell, SAFA Trust, SAAR Foundation, Sterling Charitable Gift Fund.

Mirza Revocable Living Trust – Safa Group trust operated by Yaqub Mirza.

Muslim World League (MWL) – MWL was founded by the founders of Al-Qaida. International Islamic Relief Organization is the operational arm of the MWL.

Nafi, Bashir – Active directing member of the World Islamic Studies Enterprise/ Islamic Committee for Palestine until he was deported for visa fraud in mid 1990's. Nafi was sponsored into the U.S. by Sami Al-Arian and later worked at IIIT.

Najar, Mazen – Currently incarcerated in the United States for immigration violations, Nájar was formerly involved in the daily operations of WISE and ICP in Florida, along with Al-Arian, Khalil Shikaki, Bashir Nafi and Ramadan Shallah.

Naseef, Abdullah Omar – Officer and/or Director of Makkah Murrah Charity Trust and Rabita Trust.

Nasir, Sayed Abu - Bangladeshi national alleged by India's Deputy Commissioner of Police to have targeted U.S. Consulates for bombings.

Nouri, Khaled – Director of the Success Foundation.

Odeh, Sheik Abdel Aziz – Spiritual leader of the Palestinian Islamic Jihad-SF, Odeh was a cofounder of the PIJ-SF along with Fathi Shikaki.

Omeish, Mohamed – President of Islamic Relief Organization, Success Foundation, and IIRO.

Orr, Mark – Director of the International Affairs Center, University of South Florida. Orr was the addressee on a letter from Ramadan Abdallah Shallah, wherein Shallah identifies IIIT as the largest contributor to the World Islamic Studies Enterprise.

Ozaan Capital Management, Inc. – "Safa Group" corporation located at the residence of Mohammad Omar Ashraf.

Palestine Islamic Jihad-Shikaki Faction (PIJ-SF) – A Specially Designated Terrorist Group founded by Fathi Shikaki in 1980, with the mission of the elimination and destruction of Israel. After Shikaki was assassinated in 1995, Ramadan Abdallah Shallah succeeded Shikaki as the organization's leader.

Qureshi, Manzoor – Now deceased, Quereshi was the accountant for many of the Safa Group organizations.

Rabita Trust – A designated terrorist organization, Rabita Trust is a Pakistani-based contingent of the Muslim World League, which has no branches or offices in the U.S.

Rahman, Sheik Omar Abdel (a.k.a the "Blind Sheik") – A convicted terrorist who orchestrated the World Trade Center bombing in 1993.

Reston Investments, Inc. – "Safa Group" corporation located at 555 Grove Street, Ste. 114, Herndon, Virginia, currently operated by Al-Talib, Barzinji, and Mirza.

SAAR Foundation - The SAAR Foundation at 555 Grove Street, Herndon, Virginia was dissolved in December 2000 and replaced by the Sterling Charitable Gift Fund. Its directors were Mirza, Sedky and Jaghlit.

SAAR Foundation, Canada The SAAR Foundation Canada is an affiliate of the SAAR Foundation.

SAAR International – A "Safa Group" corporation currently incorporated in Washington, D.C. and operated by the company 1212 New York Avenue, Inc., a company itself operated by Lynx Systems of 555 Grove Street, Herndon, Virginia.

Safa Charities – Charities utilized by the Safa Group, including the African Muslim Agency, Heritage Education Trust, the IIIT, the SAAR Foundation, Safa Trust, Inc., the Sterling Charitable Gift Fund, and the York Foundation, among others.

Safa Group – A complex coalition of overlapping companies in Northern Virginia controlled by individuals who have shown support for terrorists and or terrorist fronts. The primary business

addresses associated with these individuals are 500 and 555 Grove Street, Herndon, Virginia; and 750-A Miller Drive, SE, Leesburg, Virginia.

Safa Trust, Inc. – A "Safa Group" corporation.

Salah, Mohammed -- After he was arrested by Israeli authorities, Salah stated that authorities that he received funds from Elbarasse for HAMAS military operations.

Salah, Samir – Safa Group member. Director of ADAMS, Taibah International Aid Association and former director of both the SAAR Foundation and Mar-Jac Investments.

Sana-Bell Al Kheer, Inc. – A corporation with a mailing address of 555 Grove Street, Ste. 114, Herndon, Virginia, operated by Hassan Bahafzallah, Yaqub Mirza and Abdullah Bin Saleh Al-Obaid. Sana-Bell receives rent from the Muslim World League and International Islamic Relief Organization.

School of Islamic and Social Sciences (SISS) – Safa Group entity now known as the GSISS, located at 750-a Miller Dr., Leesburg, Virginia.

Sedky, Cherif – Officer and/or director of Aradi, Inc., SAAR Foundation, and Yeminvest.

Shallah, Ramadan Abdullah – Shallah is the current leader of the Palestine Islamic Jihad. He previously was involved in the operations of the Islamic Concern Project and World Islamic Studies Enterprise.

Shikaki, Fathi - Founded Palestine Islamic Jihad-Shikaki Faction (PIJ-SF) in 1980. Shikaki led the PIJ-SF until his assassination in 1995.

Shikaki, Khalil – PIJ member and brother of slain PIJ founder, Khalil Shikaki. Khalil also helped Ramadan Shallah, Sami Al-Arian, Bashir Nafi and Mazen Al-Najar in the day to day operations of the ICP and WISE in Florida. Khalil also received direct money transfers from the SAAR Foundation.

Specially Designated Terrorist (SDT) - Term used in this affidavit to describe those individuals who have been designated terrorists by either the U.S. Department of State or by the President of the United States.

Sterling Charitable Gift Fund (d/b/a Sterling Management Corporation) – "Safa Group" corporation managed by M. Omar Ashraf, Muhammad Ashraf, Yaqub Mirza and Nabil Zeki.

Sterling Investment Group – Safa Group corporation directed by Muhammad Ashraf.

Attachment E
Page 9

Sterling Management Group, Inc. – Listed operating name of Sterling Charitable Gift Fund.

Success Foundation – An affiliate of the International Islamic Relief Organization (IIRO/IRO).

Totonji, Ahmad - Director of Makkah Mukarramah Charity Trust, Safa Trust and other companies.

Unus, Iqbal – An officer or director of organizations in the "Safa Group".

World Islamic Studies Enterprise (WISE) – A Palestine Islamic Jihad (PIJ-SF) front organization closely connected to the Islamic Concern Project/Islamic Committee for Palestine, all formed by Al-Arian in Tampa.

York International – Safa Group organization located in the Isle of Man.

York Foundation - Safa Group organization located at 555 Grove Street, Herndon, Virginia, managed by Mirza and Muhammad Ashraf.