**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MAR-JAC POULTRY, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:03-cv-2422 (RMC)** |
| **RITA KATZ, et al.,** | ) | |
| **Defendants.** | ) | |

## RULE 56(F) DECLARATION OF LAURA R. HANDMAN

I, Laura R. Handman, pursuant to 28 U.S.C. § 1746, declare as follows

1. I represent Defendants Rita Katz, the SITE Institute, and IG, LLC in the above-captioned action brought by Mar-Jac Poultry, Inc. ("Mar-Jac") I make this declaration pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, in support of the Memorandum in Further Support of Defendants' Joint Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Memorandum" or "Mem."). I have personal knowledge of the facts contained herein.

2 For the reasons set forth in Defendants' Memorandum, Defendants' Joint Motion for Summary Judgment should be granted on the ground that Mar-Jac has not carried its burden of establishing the material falsity of the only defamatory meaning that could reasonably be attributed to Rita Katz's statements – that money flowed through Mar-Jac and various entities and ended up with groups supporting terrorism For reasons also set forth in the Memorandum, Plaintiff's Motion for Partial Summary Judgment should be denied for three independently sufficient reasons: (a) the Federal Rules of Civil Procedure prohibit motions for summary

judgment on *non-dispositive issues*; (b) even if such a motion were permitted by the Federal Rules, the relief Mar-Jac seeks would be unavailable because its purported evidence of falsity addresses a fact that is "subsidiary" to the alleged defamatory meaning Mar-Jac attributes to Katz's statements and such subsidiary issues are not separately actionable; and (c) to the extent the details of Mar-Jac's poultry processing operations are in any sense material, Mar-Jac's assertions regarding those operations give rise to genuine disputes of fact and, at a minimum, additional discovery pursuant to Rule 56(f) would be warranted before Mar-Jac's motion, even if otherwise proper, could be ripe for judicial consideration This declaration addresses the third ground and explains in more specific detail why, if the Court neither grants Defendants' Joint Motion nor denies Mar-Jac's Motion, discovery regarding Mar-Jac's chicken accounting practices will be necessary to properly defend against Mar-Jac's Motion.

3. The subjects for which discovery would be required include but are not limited to the following.

a. Mar-Jac claims that its chicken mortality statistics could not be inflated because "[e]very phase of Mar-Jac's production and processing of its chicken inventory is scrupulously documented," and "[a]ll chicks are accounted for – to the chick – each day for accuracy " Plaintiff's Statement of Material Facts as to Which There is no Genuine Dispute ("Mar-Jac SUMF") [dkt 188-2] ¶¶ 13, 38 It describes in detail what it says are its procedures for accounting for poultry The concurrently filed Declaration of Dr Darrel Suderman notes that more information is needed to evaluate the truth of these claims *See* Suderman Decl. ¶ 8. To fully present all facts essential to opposing Mar-Jac's motion, Defendants would need to identify and depose Mar-Jac employees with

knowledge of its chicken-counting practices, beginning with the Mar-Jac employees who filed declarations.

b. Mar-Jac also claims that "[t]he loss of any substantial number of chickens would immediately be detected through documentation, independent growers who are only paid for live birds, outside auditors, and government regulators." Mar-Jac SUMF ¶ 57. Mar-Jac has not provided information from these third parties – information necessary to ascertain the reliability of its reported numbers. *See* Suderman Decl ¶¶ 6, 7, 9. At a minimum, Defendants would require the opportunity to identify these government regulators and third parties to whom Mar-Jac alludes, depose them, determine whether each kept comprehensive and accurate counts, and determine whether their statistics correspond to Mar-Jac's.

c. Mar-Jac's motion includes – for the first time – data purporting to show that Mar-Jac has unusually low "mortality" rates compared with its peers in the poultry industry and thus could not overstate its mortality numbers. *See*, *e.g.*, Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment [Dkt 188-1] at 6, 8, 15, 16 Dr Suderman's declaration notes that more information is needed to evaluate the truth of these claims, particularly in view of the several different measures by which industry participants determine mortality *See* Suderman Decl ¶¶ 10-11. At a minimum, Defendants would need discovery from Mar-Jac, its auditors, Agri Stats, and its competitors to evaluate these claims properly.

4 The information on Mar-Jac's internal poultry accounting practices and chicken mortality rates – information on which Mar-Jac now relies for partial summary judgment – is *uniquely* within Mar-Jac's control.

5. There has been no discovery with regard to these issues. As the Court is aware, Defendants could not have taken discovery on these issues before now because discovery has been stayed since 2004 due to a pending federal grand jury investigation The sole exception to this has been limited discovery, a preliminary round of four depositions and the production of only a fraction of the documents Defendants have requested, to test whether the litigation could go forward or had to be dismissed because pivotal officers and directors would invoke their Fifth Amendment rights not to testify about the central and controlling issue in the case – whether money flowed through Mar-Jac to support terrorist groups. If testimony were not available on this dispositive issue, the case would have to be dismissed Thus, discovery was stayed to see if and when such testimony would become available.

6 The key witness, Mar-Jac principal Dr. M Yaqub Mirza, did not declare himself free to testify until November 9, 2009, and did not sit for oral deposition until May 27, 2010.

7. Following one day of Dr Mirza's deposition, on June 3, the Court convened a status conference and granted Defendants' request to move for summary judgment on the threshold issue of substantial falsity

8 At the June 3 conference, Mar-Jac did not inform Defendants, or the Court, that it intended to file its own summary judgment motion on issues related to the accuracy of its accounting for chicken. Chicken counting was not the focus of the Broadcast, nor the focus of Plaintiff's Complaint, which alleged that the Broadcast conveyed that Mar-Jac was "one of the entities" involved in a "purported flow of money from Saudi Arabia through various businesses and/or charities to . . al-Qaeda, Hamas and Islamic Jihad" and further implied that Mar-Jac had, through its business and charitable relationships, engaged in a "knowing effort to support

terrorists." (Am Comp ¶¶ 13, 23, 26 ) Nor was it the focus of the litigation until now *See* Mem. at 38-42.

9 With trivial exceptions, such as isolated references to performance in board meeting minutes, Mar-Jac had not provided any documents related to its chicken mortality rates until Mar-Jac filed its Motion on July 30, 2010 In fact, on December 31, 2003, Defendants served document requests on Mar-Jac asking, *inter alia*, for "[a]ny and all documents referring to or relating to Mar-Jac's destruction of inventory, including chickens." Mar-Jac objected to this request and did not provide documents in response It now relies on such internal company documents – never previously produced – to support its Motion for Partial Summary Judgment.

10 If the Defendants' Joint Motion is not granted and if Plaintiff's Motion for Partial Summary Judgment is not denied, Defendants request an opportunity to take discovery and file further briefing in response to Mar-Jac's Motion

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 17, 2010

Laura R. Handman