**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MAR-JAC POULTRY, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 03-CV-2422 (RMC)** |
| **RITA KATZ, et al.,** | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants CBS Broadcasting Inc., Rita Katz, the SITE Institute, and IG, LLC, by and through their undersigned counsel and pursuant to Local Civil Rule 7(h), respectfully submit this response to the Statement of Material Facts as to Which There Is No Genuine Dispute ("Statement") [Dkt. No. 188-2] filed by plaintiff Mar-Jac Poultry, Inc. ("Mar-Jac"). The following Response tracks the paragraph numbers of the Statement. For each numbered paragraph, Defendants restate the original paragraph, followed by Defendants' "RESPONSE," if any.

1. Plaintiff Mar-Jac Poultry, Inc. is a fully-integrated poultry company located in Gainesville, Georgia. (Answer of Defendant CBS Broadcasting Inc. (Doc. 3) ¶¶ 1, 13; Exh. A, Declaration of Randall A. Bruce ¶ 3; Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 371:9-375:7.)

RESPONSE: The facts stated are undisputed except that, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants are not able at this time to present the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to whether Mar-Jac is a "fully-integrated poultry company."

2. Mar-Jac was founded in 1954 by [] Marvin (*i.e.*, "Mar") and Jackson (*i.e.*, "Jac") McKibbon to save local farmers the cost and burden of transporting their live chickens to sell in markets as far away as Detroit and Chicago. (Exh. A, Bruce Decl. ¶ 1.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

3. On Sunday, May 4, 2003, Defendant Rita Katz appeared on the television program *60 Minutes*, which was produced and broadcast nationwide by Defendant CBS Broadcasting, Inc. (Answer of Defendant CBS Broadcasting Inc. (Doc. 3) ¶¶ 7, 25; Answer of Defendants Rita Katz, SITE Institute, Inc., and IG, LLC (Doc. 128) ¶ 8; Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; Exh. D, Transcript of May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: Objection. This fact is undisputed, but the document attached as Exhibit D to Mar-Jac's Motion is not a transcript of the Broadcast, does not purport to be a transcript, and differs in material ways from the actual transcript. Nor is Exhibit D the subject of this action. *See* Ex. 21 (Broadcast Tr.).*

4. The segment featuring Defendant Katz was entitled "Terrorist Hunter." (Answer of Defendant CBS Broadcasting Inc. (Doc. 3) ¶ 7; Answer of Defendants Rita Katz, SITE Institute, Inc., and IG, LLC (Doc. 128) ¶ 8; Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; Exh. D, Transcript of May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: Objection. This fact is undisputed, but the document attached as Exhibit D to Mar-Jac's Motion is not a transcript of the Broadcast, does not purport to be a transcript, and differs in material ways from the actual transcript. Nor is Exhibit D the subject of this action. *See* Ex. 21 (Broadcast Tr.).

* All numbered exhibits cited herein are exhibits to the Declaration of John Rory Eastburg [Dkt. No. 194-3].

5. From at least May 4, 2003 through June 9, 2003, Defendant CBS published a purported transcript of the segment on its website, http://www.cbsnews.com. (Answer of Defendant CBS Broadcasting Inc. (Doc. 3) ¶ 7; Exh. D, Transcript of May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: Disputed. CBS did not publish a transcript of the Broadcast on its website. The document attached as Exhibit D to Mar-Jac's Motion is not a transcript of the Broadcast, does not purport to be a transcript, and differs in material ways from the actual transcript. Nor is Exhibit D the subject of this action. *See* Ex. 21 (Broadcast Tr.).

6. Defendant Katz appeared in the segment disguised and using the assumed name "Sarah." (Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; Exh. E, Copy of Chart from May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: This fact is undisputed.

7. In the segment, Defendant Katz appeared with a chart or diagram and made the following statement: "So we have here just a very simple chart of how the money flows from Saudi Arabia." (Answer of Defendant CBS Broadcasting Inc. (Doc. 3) ¶ 12; Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: Disputed. The purported fact misstates what Ms. Katz said, as reflected in the Broadcast. Ex. 22 (Broadcast); Ex. 21 (Broadcast Tr.) at 18.

8. The chart includes "Mar-Jac Poultry" among a list of entities depicted as receiving money. (Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; Exh. E, Copy of Chart from May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: This fact is undisputed.

9. The chart or diagram further identifies at the bottom three entities with multiple arrows pointing in their direction. The entities listed are "Palestine Islamic Jihad," "HAMAS," and "al-Qaeda." Directly above the name "al-Qaeda" is a photograph of Osama bin Laden. (Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; Exh. E, Copy of Chart from May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: This fact is undisputed.

10. While the camera is focused [on] the portion of the chart or diagram where "Mar-Jac Poultry" appears, Bob Simon, Defendant CBS's agent and correspondent, then stated as follows: "One especially inventive idea the Saudis came up with, according to Sarah, was chickens. They bought a chicken farm in Georgia." (Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; Exh. D, Transcript of May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: Disputed. That Mar-Jac is the "chicken farm in Georgia" referred to in the Broadcast is undisputed. But the document attached as Exhibit D to Mar-Jac's Motion is not a transcript of the Broadcast, does not purport to be a transcript, and differs in material ways from the actual transcript. Nor is Exhibit D the subject of this action. *See* Ex. 21 (Broadcast Tr.). The statement that "the camera is focused [on] the portion of the chart or diagram where 'Mar-Jac Poultry' appears" also misstates the record – the camera is focused on the "SAAR Network," which includes beneath it a reference to Mar-Jac as well as several other entities. *See* Ex. 22 (Broadcast).

11. The broadcast then showed video footage of one of Mar-Jac's trucks clearly bearing the name "Mar-Jac Poultry, Inc." and Mar-Jac's logo and a sign reading "Mar-Jac Poultry." (Answer of Defendant CBS Broadcasting Inc. (Doc. 3) ¶ 16; Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; Exh. D, Transcript of May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: Objection. The fact that the Mar-Jac logo is seen is undisputed, but the document attached as Exhibit D to Mar-Jac's Motion is not a transcript of the Broadcast, does not purport to be a transcript, and differs in material ways from the actual transcript. Nor is Exhibit D the subject of this action. *See* Ex. 21 (Broadcast Tr.).

12. Defendant Katz, appearing in front of the aforementioned diagram or chart, then made the following statements:

> Katz: "Chicken, I see it, is the best cover for money laundering."
>
> Simon: "Chicken is the best cover for money laundering?"
>
> Katz: "Because chicken is one of the things that no one can really track down. If you're saying one year that you lost ten million chickens, no one can prove it, because they just died. You can't track money with chickens."

(Exh. C, Recording of May 4, 2003 *60 Minutes* Broadcast; see also Exh. D, Transcript of May 4, 2003 *60 Minutes* Broadcast.)

RESPONSE: Disputed. The document attached as Exhibit D to Mar-Jac's Motion from which the excerpt is taken is not a transcript of the Broadcast, does not purport to be a

transcript, and differs in material ways from the actual transcript. Nor is Exhibit D the subject of this action. The purported excerpt is not an accurate quotation from the Broadcast. Ex. 21 (Broadcast Tr.) at 18. Moreover, neither Ms. Katz nor the chart appear on screen when the words "Chicken – I see it as the best cover for money laundering" are spoken. *See* Ex. 22.

13. Every phase of Mar-Jac's production and processing of its chicken inventory is scrupulously documented. (Exh. F, Declaration of Joel Williams ¶ 35.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

14. Mar-Jac keeps detailed records of any and all chickens that die before they reach its plant for slaughter. (Exh. A, Bruce Decl. ¶¶ 6, 19-20, 28-29, 31, 44; Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 376:18-377:13; Exh. F, Williams Decl. ¶¶ 4, 12-13, 18-19, 22-24, 29, 33-36.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

15. Every step from the pullet house to the finished product in the box has papers authenticating every step of the entire process which is further verified by on-site government officials generating their own paper work which must match up with Mar-Jac's. (Exh. A, Bruce Decl. ¶¶ 6, 44; Exh. F, Williams Decl. ¶ 33.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the

accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman ("Suderman Decl."). As Dr. Suderman attests, while state and federal inspectors monitor poultry processing facilities, they are responsible for the health and safety of the products rather than keeping track of the number of chickens processed in a particular facility. Suderman Decl. ¶ 7.

16. Mar-Jac contracts with independent pullet farms, hen farms, and broiler farms to maintain its flocks. Mar-Jac does not itself own or manage any chicken farms. (Exh. A, Bruce Decl. ¶¶ 8, 9, 12, 18; Exh. F, Williams Decl. ¶¶ 3, 10-11.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

17. Mar-Jac purchases its foundation of breeding stock of chickens from primary breeders, who deliver day-old Pullet chicks to the various independent farms with which Mar-Jac contracts. (Exh. A, Bruce Decl. ¶ 11.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

18. A Mar-Jac supervisor is present at the time of delivery to the Pullet farm to confirm the number of chicks. This count is documented and confirmed by a delivery receipt and an invoice from the primary breeder. (Exh. A, Bruce Decl. ¶ 11; Exh. F, Williams Decl. ¶ 2.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

19. A Pullet Inventory Account is created for each new flock of birds. (Exh. A, Bruce Decl. ¶ 11.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Suderman Decl. ¶¶ 8.

20. Mar-Jac pays 13 independent contract pullet farms to raise its chickens until they reach 21 weeks of age. (Exh. A, Bruce Decl. ¶ 12; Exh. F, Williams Decl. ¶ 3.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

21. Mar-Jac's independent contract pullet farms keep detailed records of feed consumption, water consumption, mortality, and any other issues associated with Mar-Jac's chickens. (Exh. F, Williams Decl. ¶ 4.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

22. A Mar-Jac representative visits and evaluates the chickens tended by each independent contract pullet farm on a weekly basis. (Exh. F, Williams Decl. ¶ 5.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

23. At 21 weeks of age, Mar-Jac's breeding stock is moved to the next stage of production, the hen house. When they are moved, a record is made with, among other things, head counts of the birds. Those records are then transferred to the next stage in the process, the hen grower. (Exh. A, Bruce Decl. ¶ 13; Exh. F, Williams Decl. ¶ 7.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access

at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

24. Mar-Jac pays 37 independent contract farms to operate its hen growing program. (Exh. A, Bruce Decl. ¶ 18; Exh. F, Williams Decl. ¶¶ 10-11.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

25. The independent contract hen farms track mortality and daily food and water consumption and, when the hens begin to lay eggs, collect, grade, and count eggs. (Exh. F, Williams Decl. ¶¶ 8, 10-11, 15.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

26. At 25 weeks of age, Mar-Jac capitalizes its birds and sets them up on a depreciation schedule for accounting purposes. Capitalization involves another head count of Mar-Jac's birds in order to establish the input dollars to date. (Exh. A, Bruce Decl. ¶ 14; Exh. F, Williams Decl. ¶ 9.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

27. The records from the pullet flock are transferred to a Breeder Inventory Account and a Pullet Capitalization Cost report is generated. This report encompasses a count of the birds with which Mar-Jac started and which have survived to 25 weeks. (Exh. A, Bruce Decl. ¶¶ 14-15.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

28. Mortalities among the hens are recorded by the hen farm daily. (Exh. F, Williams Decl. ¶¶ 8, 12.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

29. A Mar-Jac representative visits and evaluates the flock of chickens tended by each independent contract hen farm on a weekly basis to evaluate, among other things, mortality of the birds. (Exh. A, Bruce Decl. ¶ 19; Exh. F, Williams Decl. ¶ 13.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

30. At 65 weeks of age, Mar-Jac's breeding stock is sold to Tip Top Poultry in Marietta, Georgia for slaughter. Tip Top provides Mar-Jac with count records and pays Mar-Jac for the chicken by the pound. (Exh. A, Bruce Decl. ¶ 20; Exh. F, Williams Decl. ¶ 14.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

31. When the breeder cycle is completed, a flock cost report is prepared which is based upon the number of birds capitalized at 25 weeks and the number of birds remaining at the end of the laying cycle. The ultimate cost of production is expressed in terms of "Cost per Dozen Hatching Eggs." (Exh. A, Bruce Decl. ¶ 20.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the

accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

32. When eggs are collected from a hen farm, an "egg pick up ticket" is left at the farm and sent to Mar-Jac accounting. (Exh. A, Bruce Decl. ¶ 22.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

33. The eggs collected from the hen farms are transported to a hatchery operated by Mar-Jac. Mar-Jac keeps inventory records maintaining the source of every egg in the hatchery and their stage of incubation. (Exh. A, Bruce Decl. ¶ 22; Exh. F, Williams Decl. ¶ 17.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

34. Mar-Jac pays its independent contract hen farms based upon the number of eggs that they ship to the hatchery. (Exh. A, Bruce Decl. ¶ 17; Exh. F, Williams Decl. ¶ 11.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr.

Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

35. When they hatch, the chicks are counted again. (Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 377:14-378:10; Exh. F, Williams Decl. ¶ 18.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

36. The chicks are sent to 153 independent contract broiler farms accompanied by records identifying their breeder source and counts per source flock. (Exh. A, Bruce Decl. ¶ 26; Exh. F, Williams Decl. ¶¶ 18, 20.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr.

Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

37. The broiler farms confirm the count of chicks received and are provided with a Mortality Chart which they complete during the six-week growing cycle. (Exh. F, Williams Decl. ¶¶ 18, 20.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

38. All chicks are accounted for – to the chick – each day for accuracy. (Exh. F, Williams Decl. ¶ 19.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr.

Darrel Suderman. As Dr. Suderman attests, it is impossible to know whether these claims are accurate without additional documentation, which Mar-Jac has not presented. Suderman Decl. ¶ 8.

39. Each monthly accounting cycle, a "Hatchery Cost Report" is prepared which documents the number of eggs picked up from the farms, the number of eggs placed in the incubators, the number of chicks hatched, and the number of chicks delivered to broiler farms. (Exh. A, Bruce Decl. ¶ 23.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

40. The independent contract broiler farms maintain records of daily mortalities, water consumption, feed consumption, and house temperatures. (Exh. F, Williams Decl. ¶¶ 22, 29.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

41. A Mar-Jac representative visits and evaluates the broiler flocks on a weekly basis and inspects the Mortality Charts and documents the progress and mortalities to date. (Exh. F, Williams Decl. ¶¶ 23, 29.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, it is impossible to know whether these claims are accurate without additional documentation, which Mar-Jac has not presented. Suderman Decl. ¶ 8.

42. When the broiler flocks are returned to Mar-Jac for slaughter and processing, the Mortality Charts are sent with them by the independent contract broiler farm. (Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 377:22-378:10; Exh. F, Williams Decl. ¶¶ 24, 29.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

43. When the broiler flocks arrive at Mar-Jac's plant, a second record is tracked at the plant through line speeds to verify the trailer head counts. Any deviations in count are investigated. (Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 378:11-17; Exh. F, Williams Decl. ¶ 25.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

44. Every bird processed at Mar-Jac's plant is accounted for and verified by the USDA's Federal Slaughter Inspection Service ("FSIS"). Approximately fifteen USDA inspectors are present for every shift at Mar-Jac's plant. (Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 376:5-17; Exh. F, Williams Decl. ¶¶ 31-32.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, while state and federal inspectors monitor poultry processing facilities, they are responsible for the health and safety of the products rather than keeping track of the number of chickens processed in a particular facility. Suderman Decl. ¶ 7.

45. Mar-Jac's contracts with its independent contract broiler farms are regulated by the USDA Grain Inspection, Packers, and Stockyards Administration ("GIPSA"). GIPSA requires that all records be transparent and that every flock and flock source be identified throughout the process. GIPSA also audits recordkeeping and payments to contract growers. (Exh. A, Bruce Decl. ¶ 27; Exh. F, Williams Decl. ¶¶ 30, 33.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, while state and federal inspectors monitor poultry processing facilities, they are responsible for the health and safety of the products rather than keeping track of the number of chickens processed in a particular facility. Suderman Decl. ¶ 7.

46. Mar-Jac pays its independent contract broiler farms by the pound received for processing. (Exh. A, Bruce Decl. ¶ 25; Exh. F, Williams Decl. ¶ 30.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

47. Each farmer receives documentation showing the number of birds started, the number of birds processed, pounds processed, grower cost, and grower pay. (Exh. A, Bruce Decl. ¶ 32.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject

to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Suderman Decl. ¶ 9.

48. Live Inventory Accounts are maintained for all classes of birds and consist of individual farm records documenting the number of birds and the costs associated with them. Mar-Jac employs extensive checks and balances throughout its accounting system to insure the accuracy of these accounts. (Exh. A, Bruce Decl. ¶¶ 33-34.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

49. Mar-Jac is audited every year by an outside auditing firm, Frazer Frost, LLP. (Exh. A, Bruce Decl. ¶¶ 34-35; Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 379:11-380:14.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject

to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party kept accurate counts. Suderman Decl. ¶ 9.

50. As part of its audits of Mar-Jac, Frazer Frost conducts inventory observations visually confirming the number of birds on a randomly-selected sample of independent farms used by Mar-Jac. (Exh. A, Bruce Decl. ¶ 35.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party kept accurate counts. Suderman Decl. ¶ 9.

51. The Georgia Department of Agriculture regulates and inspects the mortality records, disposal procedures, and disposal facilities of Mar-Jac and all of its independent contract pullet farms, hen farms, and broiler farms. (Exh. F, Williams Decl. ¶¶ 6, 12, 22, 26-29.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject

to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, while state and federal inspectors monitor poultry processing facilities, they are responsible for the health and safety of the products rather than keeping track of the number of chickens processed in a particular facility. Suderman Decl. ¶ 7.

52. Mar-Jac prepares a report that provides accounting and cost information for the Broilers slaughtered. (Exh. A, Bruce Decl. ¶ 28, Exh. A.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

53. The numbers reflected on these reports are accurate and have not been overstated or manipulated in any way. (Exh. A, Bruce Decl. ¶ 29.)

RESPONSE: Objection. Argumentative. This assertion, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this assertion. Moreover, this assertion is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Suderman Decl. ¶ 9.

54. For each of the stated fiscal years, Mar-Jac recorded the following figures regarding the mortality rates of its Broilers: [chart omitted] (Exh. A, Bruce Decl. ¶¶ 28-31, Exh. A.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, the vague term "mortality" is not defined by Mar-Jac, and it may refer to one or more of several measures such that the truth of Mar-Jac's claims of industry-leading mortality rates is not self-evident based on the limited information Mar-Jac has provided. Suderman Decl. ¶ 10.

55. According to analyses performed by Agri Stats, Inc., Mar-Jac's recorded broiler mortality rates for the years 2000, 2001, 2002, and 2003 were 1.64%, 2.00%, 2.64%, and 2.32%, respectively. These rates ranked first, first, eighth, and second, respectively, for each of these years among all subscribers to Agri Stats' service, which included the vast majority of all poultry companies in the United States including Tyson Foods and Purdue Farms, Inc. (Exh. A, Bruce Decl. ¶¶ 36-42, Exhs. B, C, D, and E.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, the vague term "mortality" is not defined by Mar-Jac and it may refer to one or more of several measures such that the truth of Mar-Jac's claims of industry-leading mortality

rates is not self-evident based on the limited information Mar-Jac has provided. Suderman Decl. ¶ 10.

56. By virtue of its records and those of its independent contractor farms, Mar-Jac can identify and trace any and all chickens that die prior to slaughter. (Exh A, Bruce Decl. ¶ 44; Exh. B, Tr. of Deposition of Mohammad O. Ashraf at 387:7-388:3; Exh. F, Williams Decl. ¶¶ 33, 35-36.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, while it may be possible to contact every related third party, obtain its internal counts (if kept), tabulate them, and match them against Mar-Jac's reported numbers, this would be a substantial undertaking and not customary in the poultry business. As a result, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

57. The loss of any substantial number of chickens would immediately be detected through documentation, independent growers who are only paid for live birds, outside auditors, and government regulators. (Exh. A, Bruce Decl. ¶ 44; Exh. F, Williams Decl. ¶ 35.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether

there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, while it may be possible to contact every related third party, obtain its internal counts (if kept), tabulate them, and match them against Mar-Jac's reported numbers, this would be a substantial undertaking and not customary in the poultry business. As a result, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

58. Any false entries on Mar-Jac's books and records for chicken mortalities could easily be proven to be fabricated by contacting the independent growers and regulators. (Exh. A, Bruce Decl. ¶ 44; Exh. F, Williams Decl. ¶ 36.)

RESPONSE: Objection. This fact, even if true, is not material to the determination of any party's entitlement to judgment in this action. In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact. Moreover, this asserted fact is subject to genuine dispute, for the reasons articulated in the accompanying Declaration of Dr. Darrel Suderman. As Dr. Suderman attests, while it may be possible to contact every related third party, obtain its internal counts (if kept), tabulate them, and match them against Mar-Jac's reported numbers, this would be a substantial undertaking and not customary in the poultry business. As a result, Mar-Jac has not provided information from third parties sufficient to demonstrate the reliability of its reported numbers. Even if it had, it would be impossible to know without additional data whether every third party with whom Mar-Jac contracts kept accurate counts. Suderman Decl. ¶ 9.

59. Never, at any time, has Mar-Jac manipulated, overstated, or otherwise altered its records of chickens that die prior to slaughter for any purpose. (Exh. A, Bruce Decl. ¶ 45.)

RESPONSE: Disputed. These facts are not material to the determination of any party's entitlement to judgment in this action, because the Broadcast does not accuse Mar-Jac of manipulating, overstating, or otherwise altering its records of chickens. *See* Memorandum in Further Support of Defendants' Joint Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Joint Reply") at 26-33. To the extent the Broadcast said these matters were under investigation, that is an admitted fact. *See* Defendants' Composite Statement of Undisputed Material Facts ("Comp. SUMF") ¶¶ 33-50; *see also* Ex. 16 at 2 (Affidavit of David Kane, Senior Special Agent of the U.S. Customs Service, demonstrating probable cause to conclude that the individuals who were in control of the Safa Group entities had "provid[ed] material support to terrorists" and engaged in "money laundering[ ] and tax evasion through the use of a variety of related for-profit companies and ostensible charitable entities under their control, most of which are located at 555 Grove Street, Herndon, Virginia."). In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact about Mar-Jac's chicken accounting records.

60. Never, at any time, has Mar-Jac laundered or attempted to launder money for any purpose or by any manner or means. (Exh. A, Bruce Decl. ¶ 45; Exh. F, Williams Decl. ¶ 36.)

RESPONSE: Disputed. These facts are not material to the determination of any party's entitlement to judgment in this action, because the Broadcast does not accuse Mar-Jac of laundering money. *See* Joint Reply at 23-33. To the extent money laundering is referenced, it is only to state that such allegations were then the subject of an ongoing

federal criminal investigation, which fact is not disputed. Comp. SUMF ¶¶ 33-50. *See also* Ex. 16 at 2 (Affidavit of David Kane, Senior Special Agent of the U.S. Customs Service, demonstrating probable cause to conclude that the individuals who were in control of the Safa Group entities had "provid[ed] material support to terrorists" and engaged in "money laundering[] and tax evasion through the use of a variety of related for-profit companies and ostensible charitable entities under their control, most of which are located at 555 Grove Street, Herndon, Virginia."); Comp. SUMF ¶¶ 87-244; *In re Grand Jury Investigation*, 352 F. App'x 805, 809-10 (4th Cir. 2009) (discussing evident scheme by Saar "to defraud the United States Government . . . both by concealing the ultimate disposition of [its] funds through the transfer of assets overseas and by using [its] tax-exempt status to circumvent the collection of taxes on the profits of individuals"). In addition, for the reasons specified in the accompanying Rule 56(f) Declaration of Laura Handman, Defendants do not have access at this time to the requisite evidence that would permit the Court to determine whether there exists a genuine issue as to this asserted fact.

Dated: September 17, 2010

Respectfully submitted,

/s/ Thomas Curley
Lee Levine (D.C. Bar No. 343095)
Gayle C. Sproul (D.C. Bar No. 495965)
Thomas Curley (D.C. Bar No. 473798)
John B. O'Keefe (D.C. Bar No. 974892)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
1050 Seventeenth Street, NW, Suite 800
Washington, D.C. 20036-5514
(202) 508-1100
(202) 861-9888 fax

*Attorneys for Defendant CBS Broadcasting Inc.*

/s/ Thomas Curley (for Laura Handman)
Laura R. Handman (D.C. Bar No. 444386)
Robert Scott (D.C. Bar No. 419559)
John Rory Eastburg (D.C. Bar No. 984434)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20006-3402
(202) 973-4200
(202) 973-4499 fax

*Attorneys for Defendants Rita Katz, the SITE Institute, and IG, LLC*